## CHARLES JOHNSON *v.* COMMISSIONER OF CORRECTION
### (SC 17883)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued September 6, 2007—officially released February 26, 2008

*Mary H. Trainer*, special public defender, for the appellant (petitioner).

*Jessica Probolus*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ZARELLA, J. The principal issue in this appeal is whether a petitioner seeking a writ of habeas corpus who has not moved to withdraw his guilty plea pursuant to Practice Book § 39-27 (4),[1] or challenged his plea on direct appeal, is procedurally defaulted from prevailing in a habeas action in which he claims that his trial counsel provided ineffective representation in connection with his plea. The petitioner, Charles Johnson, filed a petition for a writ of habeas corpus, seeking to withdraw his plea under the *Alford* doctrine[2] on the ground of ineffective assistance of counsel. The habeas court rendered judgment dismissing in part and denying in part the habeas petition, and denied the petitioner's petition for certification to appeal. On appeal, the petitioner claims that the habeas court abused its discretion

---

[1] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance [include] . . .

"(4) The plea resulted from the denial of effective assistance of counsel . . . ."

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Fowlkes*, 283 Conn. 735, 736 n.1, 930 A.2d 644 (2007).

in denying his petition for certification to appeal and improperly rejected his claims regarding his trial counsel's ineffective representation.

The habeas court made the following findings of fact. The petitioner was charged with two counts of aiding aggravated sexual assault in the first degree in violation of General Statutes §§ 53a-70a (a) (4) and 53a-8, two counts of aiding sexual assault in the first degree in violation of General Statutes §§ 53a-70 (a) (1) and 53a-8, one count of conspiracy to commit sexual assault in the first degree in violation of § 53a-70 (a) (1) and General Statutes § 53a-48, one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), one count of aiding sexual assault in the third degree in violation of §§ 53a-72a (a) (1) (A) and 53a-8, one count of aiding burglary in the first degree in violation of General Statutes §§ 53a-101 (a) (2) and 53a-8, and one count of aiding kidnapping in the second degree in violation of General Statutes §§ 53a-94 and 53a-8.

The charges resulted from a complaint of sexual assault by a female prisoner that had occurred on August 18, 1999, while she was being transported to New Haven from the Derby courthouse in a van holding several other inmates, all of whom were male. Upon entering the van in Derby, the victim was handcuffed and placed in a compartment at the rear of the vehicle. En route from Derby, the van stopped at the Milford courthouse, where the petitioner and codefendants Hubert Plummer, Marcus Gregory and David Bridges were picked up and placed in a second compartment located on the same side of the van as the victim.

After the van left the Milford courthouse, Gregory began yelling sexually provocative and threatening remarks at the victim. The victim called out for help to the sheriffs driving the van while the four inmates,

who were handcuffed in pairs, kicked violently at the gate separating the two compartments. Ultimately, the inmates, each of whom had one free arm, succeeded in forcing the gate open, rushed into the victim's compartment and sexually assaulted her, despite her resistance and continuing cries for help. According to the victim, the petitioner assaulted her by placing his penis against her face and striking her with it, ultimately ejaculating on her hair, glasses and shirt. When they were finished, the inmates returned to the second compartment, shutting the gate behind them.

Immediately following the van's arrival in New Haven, the victim informed court personnel that she had been sexually assaulted by the inmates in the second compartment. Authorities observed the condition of the victim, seized the clothing of all four inmates and took blood and semen samples from the victim and the inmates. DNA testing established that the petitioner's semen was present on the victim's clothing, hair and glasses and on the clothing of Bridges. The police also determined that the metal rods used to secure the gate separating the victim's compartment from that of the four inmates had been bent back as a consequence of forceful kicking.

The petitioner initially was represented by attorney Donald Dakers of the office of the public defender. Dakers was replaced by attorney Gerald Barber[3] in the summer of 2000. After receiving the DNA test results, the petitioner admitted to Barber that he had participated in the assault.

On December 11, 2001, the petitioner entered a guilty plea under the *Alford* doctrine to two counts of aiding

---

[3] At the time, Barber was representing the petitioner in another case pursuant to a special public defender's contract with the state. The petitioner asked Barber to represent him privately in the present case after he became dissatisfied with Dakers' performance.

aggravated sexual assault in the first degree, one count of conspiracy to commit sexual assault in the first degree, one count of aiding sexual assault in the third degree, and one count of aiding burglary in the first degree. The trial court advised the petitioner that he faced a maximum term of eighty-five years incarceration and $65,000 in fines for the five counts to which he agreed to plead guilty. Under the plea agreement, however, the court sentenced the petitioner, on February 15, 2002, to a total effective sentence of fifteen years imprisonment followed by ten years special parole. Barber testified at a subsequent hearing before the habeas court that, in light of the DNA test results and other evidence implicating the petitioner in the crimes, he had believed that it was not in the petitioner's best interest to go to trial because he probably would have been convicted and received a lengthy sentence. The petitioner did not advise Barber that he wanted to withdraw his plea at any time prior to the imposition of his sentence, and he did not appeal from the judgment of conviction.

The petitioner filed a pro se petition for a writ of habeas corpus on May 15, 2003, and an amended petition on April 30, 2004, seeking to withdraw his *Alford* plea on the ground of ineffective assistance of counsel. The petitioner alleged that his trial counsel had not informed him adequately regarding his sentence and its consequences when he agreed to enter his plea (sentencing claim) and had failed to investigate his case adequately (investigation claim). On May 21, 2004, the respondent, the commissioner of correction, filed a return, raising the affirmative defense of procedural default pursuant to Practice Book § 23-30 (b)[4] and

---

[4] Practice Book § 23-30 (b) provides in relevant part: "The return shall respond to the allegations of the petition and shall allege any facts in support of any claim of procedural default, abuse of the writ, or any other claim that the petitioner is not entitled to relief."

asserting that the petitioner had not shown the cause and prejudice[5] required under *Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977),[6] *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 629 A.2d 413 (1993), and *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 589 A.2d 1214 (1991), to overcome this defect. The petitioner did not file a reply to the respondent's return.

The habeas court held hearings on August 19 and 27, 2004, during which it considered the testimony of several witnesses as well as the relevant court records and trial transcripts. No evidence was presented on the procedural default issue. On November 29, 2004, the court rendered judgment dismissing in part and denying in part the petition for a writ of habeas corpus. In its memorandum of decision, the court concluded that the petitioner's sentencing claim fell within the "ambit" of Practice Book § 39-27 and was procedurally defaulted. The court further concluded that the petitioner had not shown the cause and prejudice required under *Barile* v. *Commissioner of Correction*, 80 Conn. App. 787, 789–90, 837 A.2d 827 (relying on *Wainwright* v. *Sykes*, supra, 433 U.S. 87), cert. denied, 268 Conn. 915, 847 A.2d 310 (2004), to permit habeas review. See Practice Book § 23-31 (c) (petitioner must allege cause and prejudice in reply to return to permit review of issue subject to claim of procedural default). With respect to the

---

[5] As we discuss more fully in part I A of this opinion, the petitioner, under the "cause and prejudice" standard, "must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition." *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 40, 779 A.2d 80 (2001).

[6] In *Wainwright* v. *Sykes*, supra, 433 U.S. 87, the United States Supreme Court adopted a new standard for federal habeas review requiring that, "[i]n a collateral attack [on] a conviction, the petitioner must make not only a showing of cause for [his] failure to challenge the [alleged impropriety], but also a showing of actual prejudice." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 412–13, 589 A.2d 1214 (1991).

petitioner's inadequate investigation claim, the habeas court determined, pursuant to the standard applied in considering allegations of ineffective assistance on their merits, that the claim was unsupported by the evidence.[7]

On December 9, 2004, the petitioner filed a petition for certification to appeal from the judgment of the habeas court. The habeas court denied the petition. On April 15, 2005, the petitioner appealed to the Appellate Court. The case was argued before the Appellate Court on January 16, 2007. On April 3, 2007, the Appellate Court filed a request to transfer the appeal to this court pursuant to Practice Book § 65-2.[8] The court explained that the reason for the requested transfer was the need to decide the question of "whether the habeas petitioner who has not moved to withdraw his plea under Practice Book § 39-26 et seq. is procedurally defaulted from prevailing in a habeas petition where he claims his legal representation was ineffective in connection with his plea." The court further explained that the petitioner's

[7] The habeas court, citing *Torres* v. *Commissioner of Correction*, 84 Conn. App. 561, 566–67, 854 A.2d 97 (2004), specifically concluded that "[t]he petitioner has presented no evidence that takes his claim out of the realm of speculation and makes it a demonstrable reality. Stated differently, the petitioner has not shown . . . that there was—or is—any exculpatory evidence." The court, quoting *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 156, 662 A.2d 718 (1995), also concluded that "[t]he petitioner has . . . failed to show that he would have decided to plead not guilty, that he would have insisted on going to trial, and that such decision would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial." (Internal quotation marks omitted.) The habeas court did not explain why it did not consider the respondent's contention that the petitioner's inadequate investigation claim was procedurally defaulted.

[8] Practice Book § 65-2 provides in relevant part: "If, at any time before the final determination of an appeal, the appellate court is of the opinion that the appeal is appropriate for supreme court review, the appellate court may file a brief statement of the reasons why transfer is appropriate. The supreme court shall treat the statement as a motion to transfer and shall promptly decide whether to transfer the case to itself."

claim on appeal, namely, that there had been no procedural default, required review by this court because there were two conflicting lines of cases dealing with the procedural default rule and that a definitive opinion was necessary to resolve this conflict. We subsequently granted the request to transfer as well as the parties' joint motion for permission to file simultaneous supplemental briefs addressing the matter.

We begin with the applicable standard of review. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion." *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). A petitioner may establish an abuse of discretion by demonstrating "that the issues are debatable among jurists of reason . . . [the] court *could* resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further."[9] (Emphasis in original; internal quotation marks omitted.) Id., 616, quoting *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). The required determination may be made on the basis of the record before the habeas court and the applicable legal principles. See *Simms* v. *Warden*, supra, 617. "If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." Id., 612.

In the present case, the habeas court decided the petitioner's two claims of ineffective assistance of coun-

---

[9] This is the same burden that must be satisfied when a habeas petitioner is required to make a substantial showing that he has been denied a federal constitutional right for the purpose of obtaining a certificate of probable cause to appeal in federal court. See *Simms* v. *Warden*, supra, 230 Conn. 616, citing *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991).

sel on different grounds. We therefore consider each claim in turn pursuant to the foregoing standard.

## I

## SENTENCING CLAIM

The habeas court dismissed the petitioner's sentencing claim on the ground that it was in procedural default and that the petitioner had failed to show the cause and prejudice necessary to obtain habeas review under the standard articulated in *Barile*. Accordingly, we first must determine whether the habeas court abused its discretion in denying the petition for certification to appeal because the petitioner did not satisfy that standard. If we conclude that the habeas court abused its discretion, we then must determine the merits of the petitioner's claim. See *Simms* v. *Warden*, supra, 230 Conn. 612.

## A

The petitioner argues that a claim of ineffective assistance of counsel pursuant to Practice Book § 39-27 (4) falls outside the realm of claims that must be raised at trial or on direct appeal. He thus maintains that his sentencing claim was not in procedural default, he was not required to demonstrate cause and prejudice, and the habeas court should have heard the claim on its merits. The respondent counters that the habeas court correctly determined that the petitioner's claim was in procedural default and that he did not show the cause and prejudice necessary to obtain habeas review. We agree with the habeas court that the petitioner's claim was in procedural default. We conclude, however, that the court abused its discretion in denying certification to appeal on the ground that the petitioner did not satisfy the cause and prejudice standard articulated in *Barile* because jurists of reason disagree regarding the proper standard to be applied in such cases. We there-

fore examine the legal underpinnings of the habeas court's decision and other relevant law bearing on this issue.

As a preliminary matter, we set forth the applicable standard of review. "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Citations omitted; internal quotation marks omitted.) *In re Jonathan M.,* 255 Conn. 208, 217, 764 A.2d 739 (2001) (applying plenary review to question of whether habeas petition was appropriate vehicle for challenging deprivation of parental rights on basis of claim alleging ineffective assistance of counsel). The habeas court's conclusion that the petitioner's sentencing claim was in procedural default involves a question of law. Our review is therefore plenary.

Practice Book § 39-26 provides in relevant part: "A defendant may withdraw his or her plea of guilty . . . as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in [§] 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed." Two of the six grounds set forth in Practice Book § 39-27 for withdrawing a guilty plea following its acceptance are: (1) "[t]he plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed"; Practice Book § 39-27 (2); and (2) "[t]he plea resulted from the denial of effective assistance of counsel . . . ." Practice Book § 39-27 (4).

In the present case, it is undisputed that the petitioner did not withdraw his guilty plea pursuant to the rules of practice or file a direct appeal. Accordingly, the habeas court properly determined that his claim was procedurally defaulted.

When a respondent seeks to raise an affirmative defense of procedural default, the rules of practice require that he or she must file a return to the habeas petition "alleg[ing] any facts in support of any claim of procedural default . . . or any other claim that the petitioner is not entitled to relief." Practice Book § 23-30 (b). "If the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition, the petitioner shall file a reply." Practice Book § 23-31 (a). "The reply shall allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default." Practice Book § 23-31 (c).

In discussing the principles that govern review of a respondent's affirmative defense that a habeas claim is procedurally defaulted, we have recognized that, as a general rule, "[t]he appropriate standard for reviewability of habeas claims that were not properly raised at trial; *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 409; or on direct appeal; *Jackson* v. *Commissioner of Correction*, supra, 227 Conn. 132; because of a procedural default is the cause and prejudice standard. Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal *and* actual prejudice resulting from the impropriety claimed in the habeas petition. See id.; *Johnson* v. *Commissioner of Correction*, supra, 409; see also *Simms* v. *Warden*, [supra, 230 Conn. 617]; *Summerville* v. *Warden*, 229 Conn. 397, 428, 641 A.2d 1356 (1994). [T]he cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal

for reasons of tactics, inadvertence or ignorance . . . . *Valeriano* v. *Bronson*, 209 Conn. 75, 83, 546 A.2d 1380 (1988)." (Emphasis added; internal quotation marks omitted.) *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 40, 779 A.2d 80 (2001). "[T]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule. . . . [For example] a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials . . . would constitute cause under this standard." (Internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, supra, 137, quoting *Murray* v. *Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). A court will not reach the merits of the habeas claim when the petitioner fails to make the required showing. See *Johnson* v. *Commissioner of Correction*, supra, 409.

The Appellate Court has not applied these legal principles consistently in cases in which a petitioner has entered an *Alford* plea and subsequently alleged ineffective assistance of counsel, but has not moved to withdraw his guilty plea pursuant to Practice Book § 39-27 (4) or raised his claim on direct appeal. In *Barile* v. *Commissioner of Correction*, supra, 80 Conn. App. 788–89, the Appellate Court affirmed the habeas court's judgment dismissing the petitioner's claim that his guilty plea was not knowing, intelligent and voluntary because he was denied the effective assistance of counsel. The court concluded that the petitioner had not demonstrated the cause and prejudice required to overcome the procedural default resulting from his failure to file a motion to withdraw his guilty plea or to challenge his sentence through a motion to correct or on direct appeal. Id., 789–90. In several other cases, however, the

Appellate Court has concluded that similar claims were not subject to the usual rule requiring a direct appeal but were properly raised by way of a habeas petition. See *Fernandez* v. *Commissioner of Correction*, 96 Conn. App. 251, 255–56 n.3, 900 A.2d 54 (2006); *Taylor* v. *Commissioner of Correction*, 94 Conn. App. 772, 775 n.3, 895 A.2d 246 (2006), rev'd in part on other grounds, 284 Conn. 433, 936 A.2d 611 (2007);[10] cf. *Bowers* v. *Commissioner of Correction*, 33 Conn. App. 449, 453 n.3, 636 A.2d 388 ("[t]he petitioner need not satisfy the cause and prejudice test to obtain review of his claim of ineffective assistance of counsel because, if a petitioner succeeds on the merits of his claim, he will necessarily have proven both cause and prejudice"), cert. denied, 228 Conn. 929, 640 A.2d 115 (1994).

To resolve this inconsistency in the law, we turn for guidance to *Valeriano* v. *Bronson*, supra, 209 Conn. 76, in which the petitioner sought a writ of habeas corpus claiming that he had been denied effective assistance of appellate counsel when appealing his conviction. In *Valeriano*, we concluded that "the cause and prejudice

---

[10] The court in *Taylor* cited *State* v. *Leecan*, 198 Conn. 517, 541–42, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986), in concluding that an ineffective assistance of counsel claim to which a defense of procedural default has been interposed may be reviewed by the habeas court without making a finding of cause and prejudice. *Taylor* v. *Commissioner of Correction*, supra, 94 Conn. App. 775 n.3. We distinguish *Leecan* from *Taylor*, however, on the ground that the defendant in *Leecan* had gone to trial and the court, in declaring that "all . . . claims of ineffective assistance, those arguably supported by the record as well as others requiring an evidentiary hearing, [should] be evaluated by the same trier in the same proceeding"; *State* v. *Leecan*, supra, 541; was concerned primarily about judicial efficiency and the problem faced by a defendant who is required to await the outcome of his appeal on other issues before pursuing his claim of ineffective assistance. See id., 541–42. Accordingly, *Leecan* does not directly address the issue raised in the present case, namely, whether a habeas court may entertain a claim of ineffective assistance of counsel pursuant to Practice Book § 39-27 (4) when the petitioner has failed to file a direct appeal or to withdraw his plea, as required under the rules of practice, although it is not inconsistent with the reasoning in this opinion.

test is unnecessary when a habeas court is faced with a claim formulated within the narrow confines of ineffective assistance of appellate counsel.

"Although the cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance, a claim of ineffective assistance of counsel, by definition, involves incompetence under sixth amendment standards. The United States Supreme Court . . . has concluded that, although ignorance or inadvertence is not cause, ineffective assistance of counsel is a legitimate ground for cause. *Murray* v. *Carrier*, supra, [477 U.S.] 488. That determination of ineffectiveness is made under the two part test for ineffective assistance of counsel under *Strickland* v. *Washington*, [466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. If a petitioner can prove that his attorney's performance fell below acceptable standards, and that, as a result, he was deprived of a fair trial or appeal, he will necessarily have established a basis for 'cause' and will invariably have demonstrated 'prejudice.' See 3 W. LaFave & J. Israel, Criminal Procedure (1984) § 27.4, p. 351 n.80 ('[o]f course, if the basis for "cause" is itself a constitutional violation, then a separate showing of actual prejudice should not be necessary'). Although the wording of the tests is not identical and some authorities disagree; see, e.g., M. Marcus, 'Federal Habeas Corpus After State Court Default: A Definition of Cause and Prejudice,' 53 Fordham L. Rev. 663, 731 n.418 (1985) ('[w]here defendant has a viable sixth amendment ineffectiveness claim, his prejudice burden would be lighter than in [*Wainwright*] cases'); we conclude that once a defendant is denied a fair appeal that causes an unreliable conviction to stand under *Strickland* . . . it is obvious that his ineffective counsel worked to his 'actual and substantial disadvantage, infecting his [appeal] with

errors of constitutional dimension.' . . . *United States* v. *Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 [1982]; cf. *Hines* v. *Enomoto*, 658 F.2d 667, 675 (9th Cir. 1981) (if cause and prejudice standard satisfied, certainly sixth amendment violation sustained). The similarity of the second part of the *Strickland* . . . test and of the prejudice prong of the cause and prejudice test of *Wainwright* . . . makes a threshold showing of cause and prejudice unnecessary for ineffective assistance of appellate counsel claims. Rather than factoring in the *Strickland* . . . test to find cause, we conclude that it is simpler and more appropriate to move directly to the *Strickland* test. Thus, if [counsel's conduct] is shown to be within the acceptable range of conduct or the result is reliable, then the habeas petition must be denied. If counsel does not meet the *Strickland* . . . level of competence and the result is not reliable, then the petition must be granted. There is no need to confuse this process by utilizing the cause and prejudice test." *Valeriano* v. *Bronson*, supra, 209 Conn. 83–85.

We conclude that the same reasoning applies when a petitioner who has not moved to withdraw his guilty plea pursuant to Practice Book § 39-27 (4), or challenged his plea on direct appeal, brings a habeas claim alleging ineffective assistance of trial counsel. In such cases, the court need not apply the cause and prejudice test articulated in *Barile, Wainwright, Johnson* and *Jackson* in determining whether to grant the habeas petition because application of the two-pronged test in *Strickland,* as modified for guilty plea cases by *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985),[11] accomplishes the same result. See *Valeriano*

---

[11] "In *Hill* v. *Lockhart,* supra, 474 U.S. 57–58, the court determined that the same two-part standard applies to claims arising from the plea negotiation process and that the same justifications for imposing the prejudice requirement in *Strickland* were relevant in the context of guilty pleas. Although the first half of the *Strickland* test remains the same for determining ineffective assistance of counsel at the plea negotiation stage, the court modified the

v. *Bronson*, supra, 209 Conn. 83–84. As we stated in *Valeriano*, "[i]f a petitioner can prove that his attorney's performance fell below acceptable standards, and that, as a result, he was deprived of a fair trial or appeal, he will necessarily have established a basis for 'cause' and will invariably have demonstrated 'prejudice.'" Id. We therefore conclude that, although the petitioner in the present case failed to withdraw his plea or to challenge his sentence on direct appeal, the habeas court abused its discretion when it denied the petition for certification to appeal on the ground that the petitioner had failed to satisfy the cause and prejudice test articulated in *Barile*. The court's determination was not merely debatable among jurists of reason but was incorrect in light of our conclusion in *Valeriano* that "it is simpler and more appropriate to move directly to the *Strickland* test" than to apply *Strickland* for the purpose of making a threshold showing of cause and prejudice under *Wainwright, Jackson* and *Johnson*.[12] Id., 84–85. Accordingly, we examine the merits of the habeas court's determination regarding the petitioner's sentencing claim pursuant to the test for ineffective assistance of counsel

---

prejudice standard. As in *Strickland*, the prejudice standard for plea negotiations is intended to determine whether, but for counsel's constitutionally deficient performance, the outcome of the plea process would have been different. The court went on to require that in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Id., 59.

"The . . . court also stated that the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial. Id." (Internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 156, 662 A.2d 718 (1995).

[12] We note that claims of ineffective assistance of counsel that are procedurally defaulted because counsel was impeded from complying with the state's procedural rule due to some objective factor external to the defense must continue to be decided pursuant to the cause and prejudice standard articulated in *Wainwright, Jackson* and *Johnson*.

set forth in *Strickland* and *Hill*.[13] See *Simms* v. *Warden,*
supra, 230 Conn. 612 (if petitioner succeeds in establish-
ing abuse of discretion, he must demonstrate that judg-
ment of habeas court should be reversed on its merits).

## B

The following additional facts are relevant to our
resolution of the petitioner's sentencing claim. The
amended habeas petition alleged that the petitioner's
trial counsel had not adequately informed him regarding
"the sentence that would be imposed and the conse-
quences thereof . . . ." The petition also alleged that
the petitioner had been "misinformed by his counsel
of the actual sentence that was to be imposed by the
court . . . ." The petition contained no specific facts,
however, to support these allegations.

Thereafter, the habeas court made the following find-
ings of fact in its memorandum of decision. "The [trial]
court . . . conducted a thorough canvass of the peti-
tioner and found the [plea] to be voluntary and under-
standingly made with the assistance of competent
counsel.[14] The [trial] court's canvass included questions

---

[13] We conclude, after reviewing the record, that the habeas court made
sufficient findings of fact to permit us to determine whether the petitioner
has demonstrated ineffective assistance of counsel.

[14] The trial court, the petitioner and trial counsel engaged in the follow-
ing colloquy:

"The Court: Are you pleading voluntarily and of your own free will?

"[The Petitioner]: Yes, Your Honor.

"The Court: Has anybody forced or threatened you in any respect to
compel you to enter these pleas?

"[The Petitioner]: I'm—well, the prosecutor is forcing me to take it but
I'm gonna take it anyway.

"The Court: Well . . . by forcing I don't mean force by reason of either
taking a plea or going to trial. I mean any physical threats or anything.

"[The Petitioner]: If I took it to trial, Your Honor, I would face [100] years
so I'm not gonna take it to trial and jeopardize myself from being away
from my children. I'm gonna do that, but if this is going to work out . . .
for me to get out and spend time with my children, I'll take the time.

"The Court: In other words, has anybody forced or threatened you in any
way to compel you to enter the plea? I don't mean by saying that you'd
have to go to trial.

posed to both the petitioner and his attorney regarding their understanding of the sentences to be imposed in accordance with the plea agreement. The total effective sentence, according to this agreement, was to be for fifteen years to serve followed by ten years special parole. Both the petitioner and [his trial counsel] indicated their understanding that the plea agreement corresponded with the terms indicated by the [trial] court during the canvass. The [trial] court advised the petitioner that he faced a maximum term of eighty-five years and $65,000 in fines for the five counts [that the plea was] entered on. . . .

"According to the petitioner's testimony on direct examination at the habeas [hearing], [trial counsel] told the petitioner [before he entered his plea] that the state was not willing to offer less than fifteen years to serve to resolve the matter via a plea agreement. The petitioner informed [trial counsel] that he wanted less than fifteen years. The petitioner also testified that he did not know that he would get a fifteen year sentence; instead, the petitioner thought he would receive a ten year sentence. Nevertheless, the petitioner testified toward the end of the direct examination that he knew he was going to get fifteen years at sentencing. The petitioner further testified that he never wanted to go to trial in this matter and that, if he had gone to trial, he would have won.

"[The Petitioner]: I still say the prosecutor is forcing me into taking it . . . but no.

"The Court: Of course you are going to trial if you are not accepting the plea.

"[The Petitioner]: No. No, Your Honor. No one is forcing me into it.

"The Court: Have you had a chance to discuss with your attorney the elements of the charges and the evidence the state claims to have? The nature of the charges? The elements of the charges and the evidence the state claims to have?

"[The Petitioner]: Yes, Your Honor. I have.

"The Court: All right. You understand the elements and the evidence. Counsel, are you satisfied the defendant understands the elements of the offenses and the evidence the state claims to have?

"[Trial Counsel]: Yes, I am, Your Honor."

Lastly, the petitioner testified that, although he asked [trial counsel] about the withdrawal of his plea, he never advised [trial] counsel that he wanted to withdraw his plea . . . .

"[Trial counsel] testified [at the habeas hearing] that he went over the police reports and witness statements with the petitioner. Additionally, [trial counsel] went over the charges and explained the offense elements to the petitioner. [Trial counsel] explained what it meant to aid in committing a sexual assault, as well as the other offenses. [Trial counsel] also explained special parole to the petitioner. According to [trial counsel], the petitioner, who was very knowledgeable about the court system, was an intelligent client who understood what was being communicated to him. [Trial counsel] had no doubt that the petitioner understood that the plea agreement was for fifteen years to serve followed by ten years special parole. . . .

"[Trial counsel] testified that he could think of no reason why the petitioner would pursue an appeal."

As we previously stated, in order to determine whether the petitioner has demonstrated ineffective assistance of counsel, we apply the two part test enunciated by the United States Supreme Court in *Strickland* and *Hill*. See, e.g., *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 151, 662 A.2d 718 (1995). In *Strickland*, which applies to claims of ineffective assistance during criminal proceedings generally, the United States Supreme Court determined that the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. *Strickland* v. *Washington*, supra, 466 U.S.

688, 694. The first prong requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the [s]ixth [a]mendment." Id., 687. Under the test in *Hill*, in which the United States Supreme Court modified the prejudice prong of the *Strickland* test for claims of ineffective assistance when the conviction resulted from a guilty plea, the evidence must demonstrate "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill* v. *Lockhart*, supra, 474 U.S. 59.

The standard of appellate review of habeas corpus proceedings is well settled. "The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 152–53.

In *Strickland*, the United States Supreme Court explained that "the proper standard for attorney performance is that of reasonably effective assistance. . . . [A] guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not a reasonably competent attorney and the advice was not within the range of competence demanded of attorneys in criminal cases. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defen-

dant must show that counsel's representation fell below an objective standard of reasonableness." (Citations omitted; internal quotation marks omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 687–88.

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice . . . are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. . . .

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted

defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." (Citations omitted; internal quotation marks omitted.) Id., 688–90.

In the present case, the petitioner claimed in his amended habeas petition, and continues to claim on appeal, that his trial counsel's performance was deficient because he failed to provide the petitioner with adequate and correct information regarding the sentence that the petitioner would receive in connection with his *Alford* plea. There are no facts in the record, however, to support this claim. Indeed, the habeas court's findings support the opposite conclusion. Among other things, the court specifically noted testimony at the habeas hearing that: the petitioner's trial counsel told the petitioner that the state was not willing to offer less than fifteen years to serve in exchange for his plea; the petitioner told his trial counsel that he wanted less than fifteen years; the petitioner knew prior to entering the plea that he was going to receive fifteen years at sentencing; trial counsel had no doubt that the petitioner understood that the plea agreement was for fifteen years imprisonment followed by ten years special parole; and trial counsel believed that the petitioner was intelligent, understood what was being communicated to him and was very knowledgeable about the court system.

The habeas court also noted in its findings that the trial court's canvass included questions to the petitioner regarding his understanding of the sentence to be imposed under the plea agreement, that the petitioner understood that the plea agreement corresponded with the terms indicated by the trial court during the canvass

and that the trial court found the plea to be voluntary and understandingly made with the assistance of competent counsel. On the basis of these findings, we cannot conclude that the petitioner's legal representation fell below an objective standard of reasonableness under *Strickland,* and, therefore, we need not reach the question of whether counsel's performance prejudiced the defense.

The petitioner nonetheless argues that his counsel's performance was deficient with respect to the sentencing claim because he did not provide the petitioner with an adequate explanation of the implications of an *Alford* plea, thus leading the petitioner to believe, incorrectly, that he would be able to " 'get back into court' " for a hearing on his case after he entered the plea. The respondent replies that, to the extent that the petitioner claims that he did not understand an *Alford* plea, his claim is unreviewable because he failed to raise it before the habeas court. We agree with the respondent.

The following additional facts are relevant to our resolution of this issue. The amended petition contained no allegations that the petitioner did not understand the consequences of an *Alford* plea, including how such a plea might affect his ability to institute further judicial proceedings or "get back into court." (Internal quotation marks omitted.) Thereafter, the petitioner testified at the habeas hearing that he had not understood the implications of an *Alford* plea and that his trial counsel had never asked him if he wished to go to trial. He also testified that he was told by his trial counsel that he could " 'get back into court' " by entering an *Alford* plea. He finally testified that, if counsel had informed him that he could bring an appeal, he would have appealed from the plea agreement before he filed the habeas petition. The habeas court made no findings of fact and did not rule on this matter, focusing instead

on the sentencing claim and other questions that the petitioner expressly had raised in his amended petition.

We conclude that the petitioner's claim that his trial counsel misinformed him because he did not explain that the petitioner would not be able to " 'get back into court' " after he entered his *Alford* plea is unreviewable. "This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled [on] and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Mitchell* v. *Commissioner of Correction*, 68 Conn. App. 1, 7, 790 A.2d 463, cert. denied, 260 Conn. 903, 793 A.2d 1089 (2002); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"). The petitioner in the present case did not claim in his amended habeas petition that he did not understand an *Alford* plea and its consequences but, rather, that he failed to understand his sentence, an entirely different issue. Although the petitioner testified at the habeas hearing that his trial counsel did not explain that he would not be able to " 'get back into court,' " the habeas court made no findings or ruling on that issue, and he filed no subsequent motion for articulation for the purpose of obtaining such a ruling. Furthermore, the manner in which the sentencing claim was presented in the habeas petition did not suggest to the court that the petitioner was basing his ineffective assistance of counsel claim on his misunderstanding of the nature of an *Alford* plea and its effect on his ability to institute further judicial proceedings. Accordingly, our review of the petitioner's newly articulated claim would amount to "an ambuscade of the [habeas] judge"; (internal quotation marks omitted) id.; and we decline to do so.

We conclude that the habeas court improperly dismissed the petitioner's sentencing claim but that the

petitioner cannot prevail on the merits of that claim. We therefore remand the case to the habeas court with direction to deny the petitioner's habeas petition as to that claim.

## II

### INADEQUATE INVESTIGATION CLAIM

The petitioner next claims that the habeas court improperly denied his petition for certification to appeal from the denial of his claim of an inadequate investigation by his trial counsel. The petitioner specifically claims that his counsel did not substantiate the DNA test results or request a second test of the DNA samples by his own expert. For example, he contends that his counsel should not have accepted the state's conclusion, based on the evidence, that a boot print found on the gate separating the victim's compartment from that of the four inmates was made by the petitioner's boot, rather than the boot of one of the other three inmates. He also claims that his counsel improperly relied on testimonial evidence supplied to him by the state, some of which allegedly was unsworn and outdated, instead of validating the testimony by conducting his own investigation. The respondent replies that the petitioner failed to produce any exculpatory evidence that would have called into question the incriminating evidence. The respondent also asserts that the petitioner failed to show that his trial counsel's performance prejudiced the defense. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal as to the petitioner's inadequate investigation claim.

The following additional findings made by the habeas court are relevant to our resolution of this issue. The petitioner's original attorney, Dakers, provided the petitioner with copies of the police reports and witness statements, including statements by the victim and the

other inmates. Barber, who replaced Dakers in the summer of 2000, did not hire a private investigator and did not speak with the witnesses directly. He did receive copies of the police reports and witness statements, however, and met with the petitioner to review and discuss the contents of these documents. The petitioner admitted his participation in the charged offenses after the DNA test results implicated him in the assault.

In its memorandum of decision, the habeas court did not decide whether the petitioner's claim that his trial counsel had failed to conduct an adequate investigation of the underlying case was in procedural default, as the respondent alleged in the return. The court instead reviewed the claim on its merits and concluded that the petitioner had not demonstrated that his counsel had overlooked any exculpatory evidence that should have been presented in the habeas proceeding. The court noted that the petitioner had persisted in maintaining that the fact that he had not touched the victim had some bearing on his convictions and that the petitioner had called Bridges as a witness at the hearing and submitted Bridges' sworn affidavit attesting that the petitioner had not touched the victim. The court further noted that the elements of the crimes to which the petitioner pleaded guilty under the *Alford* doctrine did not require that he touch the victim or sexually assault her. The court specifically noted that General Statutes § 53a-8 (a) provides in relevant part that "[a] person, acting with the mental state required for the commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." The court finally observed that the forensic evidence established that the petitioner's semen was present on the victim's clothing, hair and glasses, as well as on Bridges' clothing, and that the

victim, who was prepared to testify if the matter had gone to trial, reported that the petitioner had grabbed her breasts and placed his penis up against her face and struck her with it. The court also concluded, with respect to the prejudice prong of *Hill*, that the petitioner had failed to show that, but for his counsel's deficient performance, he would have decided to plead not guilty, insisted on going to trial and based his decision to do so on the likelihood that the introduction of allegedly missing evidence or an unidentified defense would have been successful. The habeas court therefore denied the claim of inadequate investigation and the petitioner's subsequent petition for certification to appeal.

We first determine whether the habeas court abused its discretion under *Simms* on the grounds that the claim regarding counsel's inadequate investigation is not debatable among jurists of reason, that the court could not have resolved the claim in a different manner and that there are no allegations in connection with the claim that deserve further review. *Simms* v. *Warden*, supra, 230 Conn. 616. This requires plenary review of the habeas court's application of the standard articulated in *Strickland* and *Hill*.[15] See *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 152–53 (examination of habeas court's determination regarding ineffective assistance of counsel claim is mixed question of law and fact that requires plenary review).

We are mindful of the principle that, although "it is incumbent on a trial counsel to conduct a prompt investigation of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty

[15] Although the habeas court did not address the respondent's affirmative defense of procedural default with respect to the petitioner's inadequate investigation claim, our review of this claim on its merits under *Strickland* is identical to the review that we would have conducted if the habeas court had decided the procedural default claim in this context. See part I of this opinion.

in the event of conviction . . . counsel need not track down each and every lead or personally investigate every evidentiary possibility. . . . In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . but by demonstrable realities. . . . One cannot successfully attack, with the advantage of hindsight, a trial counsel's trial choices and strategies that otherwise constitutionally comport with the standards of competence." (Internal quotation marks omitted.) *Edwards* v. *Commissioner of Correction*, 87 Conn. App. 517, 525–26, 865 A.2d 1231 (2005).

In the present case, we agree with the habeas court that the petitioner failed to present evidence that takes his claim out of the realm of speculation and makes it a demonstrable reality. The claim that his trial counsel should have verified the DNA test results and the testimonial statements taken by the state is not based on evidence that the DNA testing was flawed, that the testimonial statements lacked credibility or that the state overlooked evidence that would have exonerated the petitioner but appears to be grounded in speculation that, if the petitioner's counsel had conducted an additional and possibly redundant investigation, he *might have* discovered exonerating evidence. Moreover, the petitioner does not dispute that he admitted his guilt to his trial counsel after he was informed of the DNA test results that implicated him in the assault. The petitioner thus provides no tangible support for his claim that his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the [s]ixth [a]mendment"; *Strickland* v. *Washington*, supra, 466 U.S. 687; and that his representation fell below an objective standard of reasonableness. See id., 688. It is therefore unnecessary to examine whether the petitioner was prejudiced by his counsel's representation under the test enunciated in *Hill*.

For all of the foregoing reasons, we conclude that the habeas court did not abuse its discretion in denying the petitioner's certification to appeal from its denial of this claim. The issue of whether trial counsel adequately investigated the petitioner's case is not debatable among jurists of reason, the court could not have resolved the issue in a different manner and there are no allegations in connection with this claim that are deserving of further review. See *Simms* v. *Warden*, supra, 230 Conn. 616.

The judgment is reversed with respect to the habeas court's dismissal of the petitioner's claim that trial counsel had failed to inform the petitioner correctly about his sentence and the case is remanded with direction to render judgment denying the habeas petition as to that claim; the appeal is dismissed with respect to the petitioner's claim that trial counsel inadequately investigated the petitioner's case.

In this opinion the other justices concurred.