******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KEVIN EPPS *v.* COMMISSIONER OF CORRECTION
(AC 35259)

Gruendel, Sheldon and Mullins, Js.

*Argued September 9—officially released November 18, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*Leon F. Dalbec, Jr.*, senior assistant state's attorney,
with whom, on the brief, were *David I. Cohen*, state's
attorney, and *Erika L. Brookman*, assistant state's

attorney, for the appellant (respondent).

*Adele V. Patterson*, senior assistant public defender, for the appellee (petitioner).

*Opinion*

SHELDON, J. In this habeas corpus action, the petitioner, Kevin Epps, who had been convicted of assault in the first degree in violation of General Statutes § 53a-59 (a) (2), and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and (C), challenged his kidnapping conviction on the ground that the trial court had failed to instruct the jury that in order to find him guilty of both assault and kidnapping in the first degree, it had to find that he intended to restrain the victim to a greater degree than was necessary to commit the assault, in accordance with *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008). The respondent, the Commissioner of Correction (commissioner), argued to the habeas court, as he does here, that the petitioner's claim of instructional error was procedurally defaulted because he failed to raise the claim during the criminal trial or on direct appeal, and failed to demonstrate good cause for, and prejudice resulting from, the failure to do so. The habeas court found that the petitioner had proved both cause and prejudice, and thus concluded that his claim was not procedurally defaulted. Accordingly, the habeas court granted the petition for a writ of habeas corpus, vacated the kidnapping conviction, and remanded the matter for a new trial on that charge. The commissioner claims in this appeal that the habeas court erred in rendering judgment in favor of the petitioner as aforesaid. We disagree, and thus affirm the judgment of the habeas court.

In addressing the petitioner's claims on direct appeal, this court set forth the following relevant facts. "The victim and the [petitioner] dated on and off for about five years, beginning in 1999, and ending at the time of the incident in question on January 10, 2004. In December, 2003, the victim and the [petitioner] became engaged. Three days prior to the incident in question, the [petitioner] informed the victim that he had tested positive for the sexually transmitted disease, chlamydia. The chlamydia diagnosis sparked several arguments between the victim and the [petitioner].

"The victim's relationship with the [petitioner] was a 'cycle,' in which they fought, she got upset and stayed away from him for a short time but eventually took him back. The victim had had enough of the circular pattern. After learning that the [petitioner] had contracted a sexually transmitted disease, the victim decided that the relationship had to end because she believed the [petitioner] was not being faithful to her. She telephoned the [petitioner] on January 10, 2004, and told him that they needed to talk because their relationship was over. On that day, the [petitioner] met the victim after work at the Stamford train station. The victim wanted to end the relationship with the [petitioner] that night. They stopped at a couple of bars in the vicinity

of the train station before the [petitioner] drove them to Rosa Hartman Park in Stamford.

"When they arrived at the park, the victim told the [petitioner] that she did not want to marry him and that she did not love him, and, in response, the [petitioner] punched her in the face. The [petitioner] subsequently pulled her into the backseat of the van and attempted to choke her several times. Eventually, the victim sat in the front seat to talk to the [petitioner] in an attempt to calm him down. At that point, she felt her pants become wet. She then looked down and saw a gasoline can and a book of matches in his hands. The [petitioner] then struck a match and set her on fire.

"The [petitioner's] version of events was different. He denied that the chlamydia diagnosis caused any disagreements. According to him, the couple went to the park and started talking and being intimate. He took several telephone calls on his cellular phone while the victim was in the van, and she became jealous that he might have been talking to females during his telephone conversations. At that point, the [petitioner] told her they needed to separate for a little while because she was unnecessarily jealous. Upon hearing this, the victim attacked him, scratching his face and telling him she was going to kill him. The [petitioner] admitted that he hit the victim at least once, though possibly two or three times. Because the victim was attacking him, the [petitioner] decided to get out of the van and to walk away to gather his thoughts. While he was walking around the van, he saw a flash and then he noticed that the victim was on fire." *State* v. *Epps*, 105 Conn. App. 84, 86–87, 936 A.2d 701 (2007), cert. denied, 286 Conn. 903, 943 A.2d 1102 (2008).

The petitioner was convicted, following a jury trial, of assault in the first degree and kidnapping in the first degree,[1] and was sentenced to twenty years incarceration on the assault charge and fifteen years on the kidnapping charge, to be served consecutively, for a total effective sentence of thirty-five years. This court affirmed the petitioner's conviction. See id.

The petitioner thereafter filed this habeas action by way of an amended petition alleging that the trial court erred in failing to instruct the jury that to find him guilty of the crime of kidnapping in the first degree, it must find that he had intended "to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit [the underlying] crime." *State* v. *Salamon*, supra, 287 Conn. 542. In response, the commissioner filed a return in which he contended that the petitioner's claim was procedurally defaulted on the basis of the petitioner's failure to raise the claim of instructional error at trial and on direct appeal. In reply to the return, the petitioner asserted that his claim was not procedurally defaulted because he had good cause for not raising that claim previously

and he had been prejudiced by the trial court's failure to instruct the jury properly on the kidnapping charge.

Following a trial, the habeas court granted the petition, vacated the petitioner's conviction and sentence on the kidnapping charge and remanded the case to the trial court for a new trial on that charge. The commissioner filed a petition for certification to appeal, which the habeas court granted, and this appeal followed.

It is undisputed that the trial court did not instruct the jury in this case in accordance with *Salamon*. *Salamon*, which substantively changed the previously settled interpretation of our kidnapping statutes, had not yet been decided at the time of the petitioner's trial. The court in *Salamon* explained: "Our legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a [petitioner] must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." Id. When, as in the present case, a defendant is charged with kidnapping in conjunction with other crimes, "the jury must be instructed that, if it finds that the [petitioner's] restraint of the victim was merely incidental to the [petitioner's] commission of another crime against the victim . . . then it must find the [petitioner] not guilty of the crime of kidnapping." Id., 550.

The court in *Salamon* further explained that "a [petitioner] may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury. For purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the [petitioner], whether that movement or confinement occurred dur-

ing the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the [petitioner's] risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." (Emphasis omitted; footnote omitted.) Id., 547–48. Our Supreme Court later ruled that its holding in *Salamon* is retroactive. *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 764, 12 A.3d 817 (2011).

On the basis of the court's rulings in *Salamon* and *Luurtsema*, and the undisputed fact that the trial court did not instruct the jury that if it found that the restraint of the victim was merely incidental to the petitioner's commission of the assault, it could not find him guilty of kidnapping, the petitioner would be entitled to a new trial on the basis of that instructional infirmity unless, in the context of this habeas action, it was determined that his claim was procedurally defaulted.

On appeal, the commissioner claims that the habeas court erred in concluding that the petitioner's instructional claim had not been procedurally defaulted.[2] We disagree.

Our review of a determination of the application of procedural default involves a question of law over which our review is plenary. *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 566, 941 A.2d 248 (2008). "In discussing the principles that govern review of a commissioner's affirmative defense that a habeas claim is procedurally defaulted . . . as a general rule, [t]he appropriate standard for reviewability of habeas claims that were not properly raised at trial . . . or on direct appeal . . . because of a procedural default is the cause and prejudice standard. Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal *and* actual prejudice resulting from the impropriety claimed in the habeas petition. . . . [T]he cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance. . . . [T]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule. . . . [For example] a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials . . . would constitute cause under this standard." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 567–68. The burden of demonstrating cause and prejudice is on the petitioner. *Brown* v. *Commissioner of Correction*, 141

Conn. App. 251, 260, 61 A.3d 554, cert. denied, 308 Conn. 941, 66 A.3d 883 (2013).

Here, the petitioner does not dispute the commissioner's allegation that the claim of instructional error was not raised at trial or on direct appeal. The petitioner thus bore the burden to demonstrate cause and prejudice—a burden the habeas court determined that he had met. In his appellate brief, the commissioner claimed that the petitioner failed to prove both cause and prejudice. At oral argument, however, the commissioner conceded that this court's recent decision in *Hinds* v. *Commissioner of Correction*, 151 Conn. App. 837, 97 A.3d 986 (2014), is dispositive on the issue of cause. In *Hinds*, this court noted that there was no basis for counsel to have asked the trial court to give, or for the trial court to have given, an instruction that, at that time, was not only not permitted by law, but had been expressly rejected by our Supreme Court. The court in *Hinds* concluded that "[b]ecause there was no reasonable basis for trial counsel to have asked for a *Salamon* type charge, and, indeed, strong reason for counsel not to seek such a charge in light of the then prevailing judicial gloss on the kidnapping statute, we agree with the habeas court's conclusion that the petitioner satisfied the cause prong of the cause and prejudice standard." Id., 855. The court in *Hinds* thus determined that the petitioner's instructional claim was predicated on a legal basis that was not available at the time of trial or on appeal. As that is the same situation with which we are now confronted, we likewise conclude that the habeas court properly determined that the petitioner satisfied his burden of proving the cause component of the cause and prejudice standard in this case.

We next turn to the commissioner's claim that the habeas court improperly determined that the petitioner proved that he was prejudiced by the inadequate kidnapping instruction. In order to demonstrate prejudice, the petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." (Emphasis in original.) *United States* v. *Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).

The commissioner argues that "because the evidence in this case clearly shows that the confinement of the victim was not merely incidental to the assaults that the petitioner inflicted upon the victim, and thus that the victim was restrained for a longer period of time, [and] to a greater degree than that necessary to commit the assaults, the petitioner cannot sustain his burden of demonstrating that actual prejudice resulted from the failure of the trial court to provide the jury with a *Salamon* type instruction."[3] (Internal quotation marks omitted.)

The court in *Salamon* explained that "[w]hether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was *not* merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury. For purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the [petitioner], whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the [petitioner's] risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." (Emphasis in original.) *State* v. *Salamon*, supra, 287 Conn. 547–48. In other words, "[w]hether the [petitioner's] conduct constituted a kidnapping . . . is a factual question for determination by a properly instructed jury." Id., 550.

Our Supreme Court has contemplated, however, that there will be instances in which those determinations may be made without a remand for a new trial for consideration by a jury. It has stated that "[o]f the 1.5 percent of department of correction inmates incarcerated for kidnapping or unlawful restraint, one can reasonably assume that only a small subset will fall within the ambit of *Salamon*. Of those, we expect that courts will be able to dispose summarily of many cases where it is sufficiently clear from the evidence presented at trial that the petitioner was guilty of kidnapping, as properly defined, that any error arising from a failure to instruct the jury in accordance with the rule in *Salamon* was harmless. . . . Likewise, we doubt the state will expend the resources to retry cases where it is reasonably clear that a petitioner could not have been convicted of kidnapping under the correct interpretation of the statute." (Citation omitted; footnote omitted.) *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 769–70.

Reading *Salamon* and *Luurtsema* together, and although the directive by the court in *Salamon* is consistent with long-standing legal principles mandating a jury's determination of factual issues, there are instances in which the evidence will be so clear that consideration by a jury is unnecessary. Thus, the standard is akin to that applied in analyses of prejudice in ineffective assistance of counsel claims that are based on counsel's failure to request or ensure that a jury is instructed on all of the essential elements of the crimes

with which a defendant is being charged. Our Supreme Court has declared: "[T]he omission of an . . . essential element [of an offense] from the court's charge . . . almost invariably satisf[ies] the second, prejudice prong of *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], because in the absence of any alternative way for the jury to learn the requirements of the law, the giving of such an incomplete instruction will invariably lead the jury to deliberate on the charged offense without determining if the state has proved the omitted element beyond a reasonable doubt. The only exceptional situation in which a different finding as to prejudice may be justified, on the theory of harmless error, is when the reviewing court, in examining the entire record, is "satisfied beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the [error . . . .]" (Emphasis in original; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 170, 869 A.2d 192 (2005).

This is not a case in which the allegations that gave rise to the kidnapping charge, or any of the charges, were uncontested and supported by overwhelming evidence. Although the incident endured longer than it took to commit the assault, the evidence is not undisputed or overwhelming that the victim's movements were restricted by the petitioner during all or portions of that incident, if at all. The victim testified that the petitioner repeatedly held her down, by sitting on top of her and pinning her down with his knees to restrain her, even when he was not hitting or choking her. The petitioner disputed those allegations. In proceeding through an iteration of the evidence presented at trial, and the permissible inferences that may be drawn from that evidence, concerning the duration of the subject incident, the actions of the petitioner and the actions of the victim, the commissioner is asking this court to weigh that evidence, little of which was undisputed, and the majority of which consisted of the testimony of the petitioner versus the testimony of the victim. Such is not a task that is properly ours to undertake.

Moreover, the assault conviction was based upon the petitioner's alleged act of pouring gasoline on and igniting the victim.[4] The court instructed the jury that the state claimed that the petitioner committed the crime of kidnapping[5] when he "grabbed [the victim] and pulled her in the backseat area [of the van], and sat on her and choked her one or more times. He would not let her out of the van, and he poured gas on her, igniting her." On the basis of that instruction, the jury could have found the petitioner guilty of kidnapping as a result of the alleged conduct of holding down and choking the victim, or the restraint that was associated with and incidental to pouring gasoline on and igniting her, the same conduct for which he was convicted of

assault in the first degree. In the absence of a *Salamon* instruction, we have no reasonable assurance that the kidnapping conviction was not based on restraint of the victim that was incidental to the assault of which the petitioner was convicted.

On the basis of the foregoing, we conclude that the petitioner proved that he was prejudiced by the instructional error on the kidnapping charge, and thus that the habeas court properly vacated his kidnapping conviction and remanded the case for a new trial on that charge.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner was acquitted of attempted murder.

[2] The commissioner also claims that "[t]he habeas court erred when it ruled that the petitioner's jury instruction claim was not subject to the procedural default rules." Although the habeas court stated that "this is not a claim subject to being procedurally defaulted," which can be interpreted in several ways, it properly proceeded to conduct a procedural default analysis. The commissioner's claim in this regard is thus of no moment.

[3] The commissioner also claims that the habeas court improperly placed the burden on him to show that the petitioner was not prejudiced by the lack of a *Salamon* instruction. Because our review of the commissioner's procedural default claim is plenary, we need not address this claim.

[4] The attempted murder charge was based upon the same conduct.

[5] The court's instructions as to the factual bases for the two alternate theories the state alleged in the kidnapping charge were identical.