******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GENE NEWLAND *v.* COMMISSIONER
OF CORRECTION
(AC 35835)

Sheldon, Keller and Harper, Js.

*Argued March 5—officially released June 24, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Michael J. Proto*, assistant state's attorney, with
whom, on the brief, was *Patricia M. Froehlich*, state's
attorney, for the appellant (respondent).

*Grayson Colt Holmes*, with whom were *Stephen A.
Lebedevitch* and, on the brief, *James J. Ruane, James
O. Ruane* and *Stephanie M. O'Neil*, for the appellee
(petitioner).

*Opinion*

SHELDON, J. The respondent, the Commissioner of Correction, appeals from the judgment of the habeas court granting the amended petition for writ of habeas corpus filed by the petitioner, Gene Newland, on the ground that the petitioner had not knowingly, intelligently, and voluntarily waived his constitutional right to counsel in his criminal trial, at which he was convicted of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), and risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The petitioner was sentenced on these charges to a term of ten years incarceration and eight years special parole. On appeal, the respondent claims that: (1) the petitioner's claims were procedurally defaulted because he did not raise them by way of direct appeal of his conviction; (2) the habeas court improperly granted the amended petition on a ground not claimed in that petition, namely, that the public defender's office had erred in determining that the petitioner was not eligible for its services; and (3) even if that ground was properly before the court, the petitioner did not meet his burden of proving that the determination of ineligibility by the public defender's office was erroneous. We affirm the judgment of the habeas court.

In its June 13, 2013 memorandum of decision granting the amended petition for writ of habeas corpus, the habeas court set forth the following relevant factual and procedural history. "On or about May 17, 2007, the petitioner was arrested and charged with sexual assault in the first degree in violation of § 53a-70 (a) (2) and risk of injury to a child in violation of § 53-21 (a) (2). At his arraignment, the petitioner was represented by the public defender for 'bond only,' and a bond of $10,000 was imposed. The petitioner's friend made the bond payment for the petitioner, and he was released pending trial. The case was transferred to part A [of the Superior Court] and continued. On June 15, 2007, without a public defender present in the courtroom, the state reported that the public defender's office deemed the petitioner ineligible for its services. The court continued the case to July 27, 2007, to allow the petitioner to retain counsel. The public defender's office did not inform the petitioner that he had a right to appeal its ineligibility decision to the court pursuant to General Statutes § 51-297 (g). . . . Nor did the court or the state inform the petitioner of this statutory right on the record. The petitioner did not appeal the ineligibility decision to the trial court.

"The petitioner appeared [before the court multiple times] over the next several months and received continuances for the purpose of hiring counsel. At his court appearance on November 16, 2007, the petitioner reported [to the court] that he was trying to refinance his property in order to obtain counsel. The court

entered not guilty pleas and a jury election on the petitioner's behalf and continued the case.

"On January 11, 2008, the state informed the trial court that the petitioner would be representing himself. The petitioner responded that he was still trying to hire counsel but that he was working two jobs and could not afford to hire an attorney. The petitioner reported that he did not have the $2500 necessary for a minimum retainer to pay private counsel to accept his case. In response to the court's inquiry as to whether he had applied for a public defender, the petitioner explained that his application had been denied because he owned property. The court then continued the matter, but did not inform the petitioner that he could appeal the public defender's decision. Nor did the state tell the petitioner that he could appeal the ineligibility decision to the trial court.

"At the next several court appearances, the case was continued for the parties to provide and receive discovery. On June 2, 2008, the state again reported that the petitioner would represent himself. In response to the trial court's question about his self-representation, the petitioner explained: 'I have no money to do otherwise. If I had money, I would [hire counsel]. I'm trying to come up [with] the money. It's—I'm barely making ends meet as it is right now. Believe me, if I could afford a lawyer, I would. I was denied a public defender because I own the property that my family lives in.' The trial court continued the matter.

"On July 18, 2008, the petitioner again stated that he needed time to hire counsel. The court continued the matter to August 15, 2008, and gave the petitioner a stern warning that he needed to retain counsel because the case would be placed on the jury list.

"On August 15, 2008, the state made a plea offer to the petitioner, and the court gave him a month to decide whether to accept or reject it. The petitioner rejected the state's offer on September 5, 2008, and the petitioner reported that he was still trying to retain counsel.

"On October 17, 2008, the state reported that the petitioner still had not hired counsel. The court asked the petitioner if he was close to hiring an attorney. The petitioner reported that he had just lost one of his two jobs and was nowhere close to hiring private counsel despite his numerous attempts to do so and asked the court if he could get some help to prepare his case for trial. The court inquired about the petitioner's financial status, and the petitioner explained that he was deemed ineligible for a public defender due to the fact that he owned property, which was in foreclosure. The court explained that the decision whether the petitioner was eligible for public defender services is made by the public defender's office and suggested that the petitioner reapply. The court did not inform the petitioner

that he could appeal the denial of services to the court. Nor did the state explain this remedy. Standby counsel was not appointed by the court.

"On December 5, 2008, the state reported that the petitioner was again deemed ineligible for the services of the public defender. Again, no public defender appeared in court with the petitioner to inform the court of this decision. Again, no one informed the petitioner that he could appeal the public defender's ineligibility determination to the trial court. The petitioner explained that he had only one job, having lost one, that his job paid only $8.35 per hour and that he had no other available funds to hire counsel. The court placed the case on the trial list for March, 2009.

"On April 15, 2009, the parties appeared for jury selection. The trial court inquired of the petitioner as to the status of his attempts to obtain counsel. The petitioner reported that he had been trying to hire an attorney, but still could not afford to hire one. He informed the court that he had been denied public defender services twice due to the fact that he owns property, which the public defender's office told him 'automatically disqualified' him for services. The petitioner informed the court that the property was encumbered by a mortgage and was in foreclosure.

"The trial court asked the petitioner: 'So implicit in what you're telling me is you're waiving your right to have counsel represent you.' To which the petitioner responded: 'At present, yes. Unfortunately, I have no other choice.' The court then proceeded to question the petitioner concerning what the court deemed his 'implicit' waiver. In response to these questions, the petitioner stated that he had a tenth grade education, worked at a gas station/market making $300 to $350 per week, no longer lived in his property, where his family was residing, and that he could not provide for his family since he lost one of his two jobs. He also stated that he had no other family resources.

"When asked if he believed if he had the kind of training and skill to represent himself on the charges at trial, the petitioner stated: 'Honestly, no, I don't feel I possess that training. I didn't go to school for it, Your Honor, so unfortunately, I don't. But I'm at the point where I have no other choice.' The petitioner stated that he understood that the case had been pending for twenty-three months and that it was not going away and 'had to be tried sometime.' He also admitted that he had been provided a reasonable amount of time to retain counsel. In terms of what he did to obtain counsel, he explained that he went to legal aid and to colleges, and called numerous lawyers, but as soon as he mentioned the charges they would 'hang up on [him].' He admitted that he had no training or skill to try the case and again stated that he '[had] no choice' but to proceed without counsel.

"The court found that the petitioner 'waived his right to be represented by counsel' and explained: 'I'm disappointed that the court is asked to make this finding, but I don't see any alternative. The matter has been on the jury list, it's come up 20 times, and it's been continued 19 times. We have a jury here this morning, and [it's] ready to hear the case.' No standby counsel was appointed.

"On May 14, 2009, after a jury trial, the petitioner was convicted on both charges. At the petitioner's sentencing, on August 7, 2009, he remained unrepresented. In his comments to the court, the petitioner argued that he had been 'wrongfully denied counsel' and that he believed that he 'could have won this case if [he] would have had a counsel.' The court then sentenced the petitioner to a total effective sentence of ten years incarceration followed by eight years of special parole. The court told the petitioner that he had the right to appeal his conviction which needed to be filed within twenty days. No appeal was filed by the petitioner.

"The evidence produced at the habeas trial revealed that between 2007 and 2009, the petitioner had two, and later one, minimum wage job. At the time of his trial, he had only one job and was making $300 to $350 per week. He had no available funds in any bank accounts. He owned a residential property located at 44 Putnam Pike, Dayville, Connecticut. That property was subject to a mortgage in the amount of approximately $117,000, and prior to his 2007 arrest had a fair market value of $168,000. As of July 22, 2008, and during the petitioner's criminal trial, the petitioner's property was subject to a foreclosure action, based on the failure of the petitioner to make payments on his mortgage. That foreclosure action was pending in the Judicial District of Windham at Putnam and captioned *Citi-Bank, N.A., as Trustee for the Benefit of the Certificate Holders of CWABs, Inc., and Asset–Backed Certificates Series 2007–QHI* v. *Gene P. Newland, Jr.*

"Public Defender Raymond Canning of the Danielson public defender's office had no recollection of the petitioner's case and no records of the petitioner's applications or financial affidavits. Attorney Canning testified as to the general practices of his office regarding its eligibility determinations for public defender services in 2007 to 2009, which were made pursuant to the Division of Public Defender Services [income eligibility] guidelines. According to Attorney Canning, although owning property does not automatically disqualify a defendant from obtaining services, the relevant issue is the amount of equity in the property.

"Attorney Canning stated that if the office finds a defendant ineligible for services, the defendant should be advised that he or she can appeal that decision to the trial court. The court finds that the petitioner in

this case was not advised of his right to appeal the public defender's ineligibility determination by the public defender's office or anyone else. The record reveals that such advice was not provided to the petitioner on the record, and the petitioner testified credibly that the public defender did not inform him of his right to appeal. In addition, Attorney Canning had no recollection of this case or this petitioner, and his office had no records of the petitioner's applications in this matter. Moreover, except for his arraignment, no public defender ever appeared in court with the petitioner to report the petitioner's ineligibility for services, contrary to the policy of the Chief Public Defender's office that they do so.

"Attorney Brian Carlow, the deputy chief public defender for the Division of Public Defender Services, testified credibly about the statewide process for appointing public defenders and the eligibility guidelines in 2007 through 2009. In addition to holding this position for six years, Attorney Carlow had previously been a public defender for approximately twenty years in various jurisdictions in Connecticut. One of his responsibilities as the deputy chief public defender is to determine eligibility disputes raised by the state or prospective clients or to answer questions from public defender offices concerning eligibility determinations. All of the regional public defender offices report to the chief public defender, and there is no jurisdictional autonomy of individual jurisdictions, generally or pertaining to eligibility matters.

"If a defendant indicates that he wishes to have a public defender appointed, the defendant is required to fill out a financial affidavit, which includes inquiries regarding cash on hand and in the bank, and whether the defendant owns real estate, and whether there is a mortgage on the property as well as its present value. The applications are retained as part of the defendant's file but are considered confidential unless there is an appeal to the trial court of a denial of eligibility. In such circumstances, the application is provided to the trial court.

"In determining whether a defendant is eligible for public defender services, the nature of the crime and the cost to hire private counsel in that jurisdiction should be taken into account. The more serious and complex the charges, the more costly it would be to retain private counsel. If the defendant meets the income eligibility requirements, there is a presumption that he or she would be eligible for services. If the defendant fails to meet those income [eligibility] guidelines, there is a presumption that he or she is ineligible for services. These presumptions are, however, rebuttable.

"Applying the income [eligibility] guidelines to this case, which Attorney Carlow stated would be considered a serious and complex case given the charges, and based on the petitioner's income, the petitioner would

have easily met the income eligibility guidelines and therefore, have been presumed eligible for services.

"As to how owning real estate factored into a defendant's eligibility for services, Attorney Carlow testified that merely owning real property does not result in an automatic disqualification for services. The key issue with respect to the ownership of real property is whether there is 'readily available' equity in the property. Whether a defendant had equity in real estate was less of a factor in 2007 through 2009 than it was in the 1980s and 1990s when the real estate market was strong and equity in property was readily accessible. In 2007 through 2009, however, having equity in real estate was less of a factor for eligibility determinations because that equity was not deemed readily accessible to defendants. Thus, Attorney Carlow testified that having $50,000 to $60,000 in equity in 2008 and 2009 should not have been a significant factor in an eligibility determination. In addition, Attorney Carlow stated that if the property had some remaining equity but was subject to a pending foreclosure action, any such equity would not be considered 'readily accessible' and thus, would be unlikely to be considered in determining eligibility for services. Defendants are not required to await the conclusion of a foreclosure action before becoming eligible for services.

"The public defenders inform the court whether the defendant is eligible for services, but the court decides whether to appoint counsel. Public defenders are obliged to inform defendants of their right to appeal an ineligibility decision to the court. Public defenders should always be in court with the defendants when reporting on their eligibility for services.

"Based on the testimony produced at the habeas trial . . . the petitioner had easily met the public defender's income eligibility requirements for a serious felony charge and was, therefore, presumed eligible for services. The Danielson public defender's office erred in denying the petitioner's application based on the fact that he owned property because the equity was limited and not readily accessible and the property was encumbered by an ongoing foreclosure action. Thus, the real property did not provide the defendant with any readily accessible funds to hire private counsel."

The habeas court concluded that "the petitioner did not knowingly, intelligently, and voluntarily waive his right to counsel because he mistakenly believed that he did not qualify for the public defender's services and only acquiesced to representing himself because he could not afford or otherwise retain private counsel. Had the petitioner been properly informed of his right to the services of a public defender, he would have accepted those services. Thus, but for the public defender's erroneous eligibility determination, the petitioner would not have 'implicitly' or otherwise waived his right

to counsel, and the trial court would not have accepted the 'implicit' waiver had it known of the petitioner's eligibility."

On those bases, the habeas court granted the petition for a writ of habeas corpus, and vacated the petitioner's conviction. The habeas court thereafter granted the respondent's petition for certification to appeal, and this appeal followed.

"A defendant has knowingly and intelligently waived the right to counsel if the trial judge finds that he (1) [h]as been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) [p]ossesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself; (3) [c]omprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and (4) [h]as been made aware of the dangers and disadvantages of self-representation. . . .

"[T]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. . . . This important decision rests within the discretion of the trial judge. . . . Our task, therefore, is to determine whether the court abused its discretion in allowing the defendant to discharge his counsel and to represent himself." (Internal quotation marks omitted.) *State* v. *Gaston*, 86 Conn. App. 218, 232, 860 A.2d 1253 (2004), cert. denied, 273 Conn. 901, 867 A.2d 840 (2005).

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012). With those principles in mind, we turn to the respondent's claims on appeal.

I

We begin with the respondent's claim that the habeas court incorrectly determined that the petitioner's claims were not procedurally defaulted. The respondent claims that the petitioner's claims were procedurally defaulted because they were not raised on direct appeal of his conviction and the petitioner failed to prove that said

default was excused by cause and prejudice.[1] We are not persuaded.

In his return to the petitioner's amended petition, the respondent alleged that the petitioner's claims were procedurally defaulted. He thereafter moved for summary judgment on that basis. The habeas court concluded that the petitioner's claims were not procedurally defaulted and, thus, denied the respondent's motion for summary judgment. A court's denial of a motion for summary judgment and a determination of procedural default involve questions of law over which our review is plenary. *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 566, 941 A.2d 248 (2008).

"In discussing the principles that govern review of a respondent's affirmative defense that a habeas claim is procedurally defaulted . . . as a general rule, [t]he appropriate standard for reviewability of habeas claims that were not properly raised at trial . . . or on direct appeal . . . because of a procedural default is the cause and prejudice standard. Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal *and* actual prejudice resulting from the impropriety claimed in the habeas petition. . . . [T]he cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance. . . . [T]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule. . . . [For example] a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials . . . would constitute cause under this standard." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 567–68.

"When a respondent seeks to raise an affirmative defense of procedural default, the rules of practice require that he or she must file a return to the habeas petition 'alleg[ing] any facts in support of any claim of procedural default . . . or any other claim that the petitioner is not entitled to relief.' Practice Book § 23-30 (b). 'If the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition, the petitioner shall file a reply.' Practice Book § 23-31 (a). 'The reply shall allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default.' Practice Book § 23-31 (c)." *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 567.

Here, in his reply to the respondent's return alleging procedural default, the petitioner pleaded that "[a]ny prejudice is presumed because the petitioner's right to

counsel was violated and the petitioner's lack of counsel is sufficient cause to excuse any default for failing to directly appeal. See *Dennis* v. *Commissioner of Correction*, 134 Conn. App. 520, 528, [536, 39 A.3d 799] (2012)." The habeas court agreed, as do we.

In *Dennis*, this court, citing to federal precedent, held that the "[v]iolation of the right to counsel is an external error" that satisfies the burden of demonstrating cause; id, 532; and that "actual prejudice is presumed when the petitioner's right to counsel is violated." Id., 536. Because, as we will discuss in further detail herein, we conclude that the petitioner's right to counsel was, in fact, violated, we agree with the habeas court that cause and prejudice are presumed.

The respondent contends that *Dennis* does not relieve the petitioner in this case of his burden of showing cause and prejudice. In so arguing, the respondent attempts to distinguish *Dennis* from this case on the ground that the trial court in *Dennis* had not canvassed the petitioner at all regarding a waiver of his right to counsel and, in fact, never made a finding of waiver, whereas here the trial court did canvass the petitioner, arguably inadequately, and allegedly made an improper finding of implicit waiver. In other words, the respondent argues, because the trial court did canvass the petitioner and did make a finding of implicit waiver, his burden of proving cause and prejudice must be greater than in those situations, like in *Dennis*, in which there was no canvass at all. Although that factual distinction might make a difference in some contexts, we conclude that it does not make a difference here because the constitutional deprivation is the same: the denial of the constitutional right to counsel.

Here, the habeas court found that the petitioner repeatedly told the trial court that he did not want to represent himself and that he wanted to be represented by counsel, but he could not afford to hire private counsel, and the public defender's office twice had determined that he was ineligible for its services. The habeas court further found that the public defender's finding of ineligibility on the basis of the petitioner's ownership of real property was erroneous because any equity held by the petitioner in that property was not readily available to the petitioner to provide funds for the retention of private counsel. The habeas court found that the petitioner attempted to demonstrate his indigence on numerous occasions, but that he was not advised, by the court or the public defender's office, of his statutory right to appeal to the trial court from the public defender's determination of ineligibility. See General Statutes § 51-297 (g).[2] The habeas court concluded that had the petitioner been properly advised of his right to the services of a public defender, either by way of a proper determination of eligibility versus a determination based solely upon the ownership of property, or by

being advised that he had the statutory right to challenge that determination to the trial court, he would not have "implicitly" or otherwise waived his right to counsel, and, had a proper determination of eligibility been performed, the court would not have made such a finding. In light of those findings, which are supported by the record and are therefore not clearly erroneous, the habeas court properly concluded that the petitioner did not knowingly, intelligently, or voluntarily waive his right to counsel. The habeas court thus did not err in determining that the petitioner's constitutional right to counsel was violated and that his claims were not procedurally defaulted.

II

The respondent next argues that the habeas court erred in granting the amended petition for a writ of habeas corpus on a basis that was not claimed therein. Specifically, he claims that because the amended petition does not set forth a claim of error on the part of the public defender's office in determining the petitioner's ineligibility for services, the habeas court improperly granted the petition on that ground. The habeas court disagreed, explaining that the propriety of the ineligibility determination went directly to the petitioner's claim that he did not knowingly and intelligently waive his right to counsel. We agree with the habeas court.

"It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise. . . . Moreover, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he [petition] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Citation omitted; internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 519–20,

876 A.2d 1178 (2005).

The petitioner pleaded in his amended petition that he had twice applied for public defender services and had twice been denied those services. Although the petitioner did not specifically allege an impropriety with the public defender's threshold ineligibility determination in his amended petition, that determination necessarily went to his knowledge regarding his right to counsel. His case was continued numerous times by the trial court to afford him the opportunity to retain counsel. He repeatedly informed the court that, despite his best efforts, he was unable hire an attorney because he did not have the financial means to do so. He repeatedly represented to the court that he wanted to be represented by counsel. After several continuances, the court determined that the petitioner had implicitly waived his right to counsel and that he had done so knowingly, intelligently, and voluntarily because he had been denied the services of a public defender but had failed to retain private counsel. Given the petitioner's repeated expressions of his desire to be represented by counsel, and his representations that he could not afford to hire private counsel although he had been deemed ineligible for a public defender, the respondent cannot reasonably claim surprise on the basis that the propriety of the ineligibility determination was at issue in challenging the court's finding of waiver of his right to counsel. We thus agree with the habeas court that the issues of whether the public defender's office erroneously determined that the petitioner was ineligible for services and whether the petitioner was informed of his right to appeal from the ineligibility determination went to the knowing and voluntary nature of the alleged waiver of the right to counsel and were thus properly before the habeas court.

### III

Because we conclude that the propriety of the public defender's determination of ineligibility was reasonably related to the petitioner's claim that he did not knowingly, intelligently, and voluntarily waive his right to counsel, and was thus properly considered by the habeas court, we reach the respondent's final claim that the petitioner failed to prove that the public defender's office erroneously determined that the petitioner was not indigent and consequently ineligible for its services.

Although "[i]t is the duty of the state to provide adequate means to assure that no indigent accused lacks full opportunity for his defense . . . [d]efendants seeking such assistance must satisfy the court as to their indigency . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Martinez*, 295 Conn. 758, 782, 991 A.2d 1086 (2010). An assessment of whether a party is indigent and thus eligible for state funded legal assistance is a factual determination that is subject to a clearly erroneous standard of review. Id. "A finding of

fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.

To be sure, the absence of the applications that were made to the public defender's office in 2007 is problematic to the petitioner's claim that the public defender's office erred in denying those applications. The petitioner, however, presented evidence as to his financial circumstances at the time that he applied for public defender services. The petitioner also testified that his applications were denied on the basis of his ownership of real property, which, at that time, was being foreclosed upon. The habeas court credited the petitioner's testimony, as well as that of Carlow, the deputy chief public defender, who testified that the ownership of property is not, in itself, a determinative factor in assessing eligibility, but, rather, that the proper consideration is whether any equity in that property is readily accessible for use in the retention of counsel. Carlow concluded, on the basis of the evidence presented, that the petitioner met the income eligibility guidelines to qualify for representation. On those bases, we conclude that the habeas court properly found that the petitioner had met his burden of proving that the determination of ineligibility by the public defender's office was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In his return to the petitioner's amended petition, the respondent alleged that the petitioner's claims were procedurally defaulted because he failed to raise them by way of direct appeal from his criminal conviction, but he also mentioned the petitioner's failure to appeal to the trial court from the public defender's determination of ineligibility. In his motion for summary judgment, the respondent also appeared to claim that the petitioner is procedurally defaulted for his failure to assert his claims either to the trial court or in a direct appeal. In addressing the respondent's claim of procedural default, the habeas court focused on the petitioner's failure to appeal to the trial court from the public defender's determination of ineligibility. In his brief to this court, the respondent again argues that the petitioner's claims were procedurally defaulted because the petitioner did not pursue them on direct appeal. Under the circumstances of this case, because our resolution of the respondent's claim of procedural default is based upon the petitioner's claim of a violation of his right to counsel and whether cause and prejudice are presumed in the presence of such a violation, the procedural mechanism by which the petitioner perhaps should have raised his claims is immaterial.

[2] General Statutes § 51-297 (g) provides: "If the Chief Public Defender or anyone serving under the Chief Public Defender determines that an individual is not eligible to receive the services of a public defender under this chapter, the individual may appeal the decision to the court before which the individual's case is pending."