******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## ASHLEY HOWARD *v.* COMMISSIONER OF CORRECTION
### (AC 47404)

Cradle, C. J., and Alvord and Wilson, Js.

*Syllabus*

The petitioner, who previously had been convicted of murder, on a plea of guilty pursuant to *North Carolina* v. *Alford* (400 U.S. 25), and, in a separate docket, had admitted to a violation of probation (collectively, plea), appealed following the granting of her petition for certification to appeal from the habeas court's judgment denying in part and dismissing in part her petition for a writ of habeas corpus. She claimed, inter alia, that the court improperly dismissed her claim that her plea was involuntary. *Held*:

The habeas court properly denied the petitioner's claim that she was deprived of the effective assistance of trial counsel during the plea process, as she failed to demonstrate that, but for the alleged deficient performance of her trial counsel, she would have proceeded to trial and, therefore, that she was prejudiced by trial counsel's performance.

The habeas court properly dismissed the petitioner's claim that her plea was involuntary, as the petitioner failed to raise the issue before the trial court or on direct appeal, and the petitioner failed to show either good cause or actual prejudice sufficient to excuse the procedural default.

Argued May 19—officially released November 25, 2025

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying in part and dismissing in part the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Judie Marshall*, assigned counsel, for the appellant (petitioner).

*Rebecca Z. Oestreicher*, special deputy assistant state's attorney, with whom, on the brief, were *Matthew*

*Gedansky*, state's attorney, and *Erin Stack*, assistant state's attorney, for the appellee (respondent).

*Opinion*

WILSON, J. Following the granting of her petition for certification to appeal, the petitioner, Ashley Howard, appeals from the judgment of the habeas court, *Bhatt, J.*, denying in part and dismissing in part her petition for a writ of habeas corpus. The petitioner claims that the habeas court improperly (1) denied her claim that she was denied the effective assistance of trial counsel and (2) dismissed her claim that her guilty plea was involuntary. We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts, which were either found by the habeas court or are not in dispute, and procedural history are relevant to our resolution of the petitioner's appeal. In the proceedings before the trial court in connection with the petitioner's criminal charges, the petitioner was represented by Attorney Richard Cohen. On June 18, 2013, the petitioner pleaded guilty pursuant to the *Alford* doctrine[1] to one count of murder in violation of General Statutes § 53a-54a and, under a separate criminal docket, admitted to a violation of probation in violation of General Statutes § 53a-32 (collectively, plea). The petitioner's murder conviction stems from an early morning dispute on June 9, 2012, between the petitioner and the victim regarding the victim's alleged infringement on the drug selling territory of the petitioner and her codefendant. During the dispute, the petitioner approached the victim as he stood on a Hartford sidewalk, discharged a firearm at close range, and killed the victim with a single gunshot to the head. Following a canvass, the court, *Alexander, J.*, accepted

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

the plea and imposed a total effective sentence of forty years of incarceration.[2]

---

[2] The canvass included the following colloquy between the court, the petitioner, and Cohen:

"The Court: Docket ending 678 charges you with the crime of murder, [§] 53a-54a, do you say guilty or not guilty?

"[The Petitioner]: Guilty.

"[Cohen]: And that's under *Alford*, Your Honor.

"The Court: And an *Alford* plea means that you don't agree with every fact that is going to be alleged against you by the state. But you recognize that if you had a trial, there is substantial likelihood that you would be convicted of this charge. And do you agree that there is the potential for a bigger sentence if you were convicted after trial? Do you agree with that?

"[The Petitioner]: Yes.

"The Court: So, the reason the person says guilty under *Alford* isn't because they are admitting every fact in the case against them, but it is because they want to take a plea agreement rather than have a trial. Is that true?

"[The Petitioner]: Yes.

"The Court: Did you take alcohol, medicine, or drugs today that prevents you from understanding the court?

"[The Petitioner]: No, ma'am.

"The Court: Did you talk to Mr. Cohen about your decision to enter into a plea agreement rather than have a trial?

"[The Petitioner]: Yes.

"The Court: And are you satisfied with the information and advice that he gave you?

"[The Petitioner]: Yeah.

"The Court: And you understand it all. Correct?

"[The Petitioner]: Correct. . . .

"The Court: Now, on the [charge of murder] these are the rights that you've given up: A right to a trial before a court or before a jury, a right to remain silent, a right to plead not guilty and have the state show that you are guilty beyond a reasonable doubt. At a trial your lawyer is allowed to confront or cross-examine the state's witnesses. You could testify on your own behalf. You could present a defense if you chose.

"[The Petitioner]: Yes, I understand.

"The Court: Do you understand each of those rights?

"[The Petitioner]: Yes.

"The Court: Has anyone forced you or threatened you in any way to make you enter these pleas?

"[The Petitioner]: No.

"The Court: Are these pleas of your own free will?

"[The Petitioner]: Yes.

"The Court: The maximum sentence or what you owe on probation is seven years and nine months. A maximum charge in murder is sixty years to serve; twenty-five years is the minimum sentence on murder. Your agreement is for a forty year sentence to serve. Is that your understanding?

"[The Petitioner]: Yes, ma'am.

Thereafter, the petitioner brought the habeas corpus action underlying this appeal. The petitioner alleged in count one of her second amended petition, inter alia, that her right to due process was violated because her guilty plea "was not knowing, intelligent, and voluntary because it was motivated by the threat of the prosecuting authority to prosecute [her] maternal and paternal grandmothers for hindering prosecution . . . if [she] did not accept the offered plea agreement" and because the court was not made aware of the alleged threat and, thus, was unable to consider this aspect of the petitioner's plea agreement. In count two, the petitioner alleged that she received ineffective assistance from trial counsel. The petitioner alleged that counsel performed deficiently by his failure: (1) to investigate facts and circumstances of the case; (2) to adequately research and prepare a theory of self-defense; (3) to consult with relevant experts; (4) to interview or obtain the testimony of specified individuals; (5) to investigate the petitioner's background, upbringing, and medical history; (6) to advise the petitioner regarding the costs and benefits of providing a statement to the police; (7) to create a record at the petitioner's plea hearing or sentencing hearing regarding the petitioner's primary motivation for accepting the plea agreement; and (8) to accurately convey to her the terms of the plea agreement as understood by the state. The petitioner asked the court to vacate the judgment of conviction and to order whatever other relief the court deemed appropriate in the interest of justice.

The respondent, the Commissioner of Correction, filed a return in which he denied the substantive allegations in counts one and two of the petition. With respect to count one, the respondent alleged procedural default

"The Court: Other than that agreement, did anyone promise you anything else to have you enter these pleas?

"[The Petitioner]: No."

as a special defense in that the petitioner failed to raise the issue concerning the voluntariness of her plea before the trial court or on direct appeal, and the petitioner had not established good cause for the failure. In her reply to the return, the petitioner alleged that she was able to establish cause and prejudice to excuse the procedural default because she was deprived of the effective assistance of trial counsel, as alleged in count two. The petitioner also replied that the "threat of the prosecuting authority . . . prevented the petitioner from seeking to withdraw her plea or otherwise litigate the matter further."

The habeas court held a trial on the petitioner's operative amended petition on August 21 and 22, 2023. The court heard testimony from Cohen; prosecuting attorney John Fahey; Hartford Police Department Detectives Christopher Reeder and Renee LaMark Muir; Frank Evangelista, the associate state medical examiner who performed the autopsy of the victim; and Andrew Meisler, a clinical and forensic psychologist retained by the petitioner's habeas counsel. The petitioner also testified and submitted exhibits. On January 9, 2024, the habeas court issued its memorandum of decision. The court concluded that the petitioner's first claim, alleging a violation of due process, was procedurally defaulted and that the petitioner had failed to establish cause and prejudice sufficient to overcome the default. The court denied the petitioner's ineffective assistance of counsel claim for failure to demonstrate either deficient performance or prejudice. Thereafter, the petitioner filed a petition for certification to appeal, which the court granted. This appeal followed.

Before we evaluate the merits of the petitioner's claims, we set forth our standard of review for habeas corpus appeals. "The habeas court is afforded broad

discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012). Additionally, the issue of "[w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Burgos* v. *Commissioner of Correction*, 229 Conn. App. 818, 829, 328 A.3d 708 (2024), cert. denied, 351 Conn. 912, 331 A.3d 738 (2025).

## I

We first address the petitioner's claim that the habeas court improperly denied her claim that she was deprived of the effective assistance of counsel. We are not persuaded.

The following principles of law are relevant to our analysis. Under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution, criminal defendants have a constitutional right to adequate and effective assistance of counsel at all critical stages of a proceeding. See U.S. Const., amend. VI; Conn. Const., art. I, § 8; see also *Strickland* v. *Washington*, 466 U.S. 668, 685–86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Horn* v. *Commissioner of Correction*, 321 Conn. 767, 775, 138 A.3d 908 (2016). The United States Supreme Court has also "long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the [s]ixth [a]mendment right to effective assistance of counsel."

*Padilla* v. *Kentucky*, 559 U.S. 356, 373, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

We evaluate the petitioner's claim of ineffective assistance of counsel by applying the well established two-pronged analysis set forth by the United States Supreme Court in *Strickland* v. *Washington*, supra, 466 U.S. 668. "First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the [petitioner] by the [s]ixth [a]mendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) Id., 687.

Cases involving claims of ineffective assistance of counsel relative to guilty pleas are also governed by the legal principles set forth in *Strickland* v. *Washington*, supra, 466 U.S. 668, as modified by *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). See *Shaheer* v. *Commissioner of Correction*, 207 Conn. App. 449, 465, 262 A.3d 152, cert. denied, 340 Conn. 903, 263 A.3d 388 (2021). In modifying the prejudice prong of *Strickland*'s two-pronged test, *Hill* provided: "[T]o satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill* v. *Lockhart*, supra, 59.

"As noted in *Strickland*, [t]he object of an ineffectiveness claim is not to grade counsel's performance. . . . The sixth amendment does not guarantee perfect

representation, only a reasonably competent attorney. . . . Representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial.'' (Citation omitted; internal quotation marks omitted.) *Shaheer* v. *Commissioner of Correction*, supra, 207 Conn. App. 467. ''[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.'' *Strickland* v. *Washington*, supra, 466 U.S. 696. ''When a [habeas petitioner] complains of the ineffectiveness of [trial] counsel's assistance, the [petitioner] must show that counsel's representation fell below an objective standard of reasonableness. . . . In other words, the petitioner must demonstrate that [trial counsel's] [performance] was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Moreover, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'' (Citations omitted; internal quotation marks omitted.) *Jordan* v. *Commissioner of Correction*, 341 Conn. 279, 287, 267 A.3d 120 (2021). ''In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'' *Strickland* v. *Washington*, supra, 695.

In *Strickland*, the court explained that ''there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the [petitioner] makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies.'' Id., 697; see also *Soto* v. *Commissioner of Correction*, 215 Conn. App. 113, 120, 281 A.3d 1189 (2022) (''It is axiomatic that courts may decide against a petitioner on either prong [of the

*Strickland* test] . . . . [T]he petitioner's failure to prove either [the performance prong or the prejudice prong] is fatal to a habeas petition." (Citation omitted; internal quotation marks omitted.)) "Thus, [a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." (Internal quotation marks omitted.) *Burgos* v. *Commissioner of Correction*, supra, 229 Conn. App. 829. Because we conclude that the petitioner failed to demonstrate that she was prejudiced by counsel's performance, we need not reach the question of whether trial counsel's performance was in fact deficient.

In count two of her petition, the petitioner alleged, inter alia, that trial counsel failed to render effective assistance because he did not adequately research and prepare a self-defense theory of defense. The petitioner urges us to conclude that, if counsel had consulted forensic experts and had investigated her personal, family, and medical history, he could have formulated a viable theory of self-defense and she would not have pleaded guilty and would have proceeded to trial. The habeas court concluded that the petitioner was not prejudiced by counsel's failure to pursue a theory of self-defense because, in light of the evidence presented, such a defense was weak or nonviable.

The petitioner further alleged in count two that trial counsel was ineffective because he failed to advise her properly during plea negotiations regarding the alleged coercive tactics employed by the state and failed to create a record of the full terms of what the petitioner viewed as a coercive plea agreement. The court rejected the petitioner's claims and concluded that the petitioner was not prejudiced. The petitioner urges us to conclude that the court erred in its analysis of this issue and its conclusion that, "[i]n light of all the circumstances, it is not credible that [the petitioner] would have rejected

the offer of forty years to go to trial with a nonviable defense and risk receiving a sentence twenty years greater than she did." We disagree with the petitioner's arguments relating to counsel failing to pursue a theory of self-defense and failing to advise her during plea negotiations of alleged coercive tactics by the state and therefore conclude that the petitioner was not prejudiced by counsel's performance.

Reviewing courts have provided multiple considerations, none individually dispositive, for evaluating the credibility of a petitioner's claim of prejudice or that but for counsel's alleged deficient representation, there is a reasonable probability that the petitioner would have insisted on going to trial. "In evaluating the credibility of such an assertion, the strength of the state's case is often the best evidence of whether a [petitioner] in fact would have changed [her] plea and insisted on going to trial . . . ." (Internal quotation marks omitted.) *Carraway* v. *Commissioner of Correction*, 144 Conn. App. 461, 475, 72 A.3d 426 (2013), appeal dismissed, 317 Conn. 594, 119 A.3d 1153 (2015).[3] Courts may also consider the viability of unpursued claims to evaluate whether it would have been rational under the circumstances for the petitioner to reject a plea offer and proceed to trial. Id.; see also *Ramos* v. *Commissioner of Correction*, 172 Conn. App. 282, 307, 159 A.3d 1174 (rejecting petitioner's claim of prejudice for failure to sufficiently investigate affirmative defense of mental disease or defect when there was "low probability" of success at trial), cert. denied, 327 Conn. 904, 170 A.3d 1 (2017).

The petitioner claims that the habeas court "erred in concluding that the petitioner's potential defense of

[3] The court, in its memorandum of decision, determined the petitioner's defense at trial to be "weak, at best." The court also credited the testimony of Fahey who testified that he believed that he had "an overwhelming case with five other witnesses." (Internal quotation marks omitted.)

self-defense was weak or nonviable," and, therefore, counsel was ineffective in his failure to pursue a theory of self-defense. We are not persuaded. On the basis of our review of the testimony and evidence presented before the habeas court, there is no reasonable likelihood that a theory of self-defense would have succeeded at trial. The evidence demonstrates that the petitioner, armed with a firearm, approached the victim as he stood on a sidewalk. The petitioner then verbally confronted the victim about the victim selling drugs on the drug selling turf of the petitioner and her codefendant. Multiple eyewitnesses provided statements implicating the petitioner as the shooter. More than one statement indicated that the petitioner verbally demanded that the victim provide her with the money the victim had received from a recent drug sale. Eyewitness statements also indicated that the petitioner attempted to go through the victim's pockets to retrieve the money just before shooting him. The undisputed evidence demonstrated that the victim was killed by a single gunshot to the head fired at close range. Although, during the habeas trial, the petitioner testified that her firearm inadvertently was discharged when she used it to strike the victim in the head, this testimony was contradicted by the testimony of the state medical examiner who performed the autopsy of the victim. According to the medical examiner, if someone had struck the victim near the gunshot wound, he would have observed a separate injury indicating blunt trauma. The examiner testified that he found no evidence of blunt trauma at or near the site of the gunshot wound. Further, although the petitioner testified that she believed that the victim typically was armed, there was no weapon found on or near the victim following the shooting. In light of the evidence presented, we find no error in the habeas court's determination that a self-defense claim was weak at best and, therefore, that the

petitioner was not prejudiced by counsel's failure to develop a self-defense theory of defense.[4]

In her second category of ineffective assistance of counsel claims made before the habeas court, the petitioner contended that she was prejudiced by counsel's performance specific to her plea, claiming that counsel failed to protect the petitioner from the coercive effects of the prosecutor's alleged improprieties regarding the possible arrest of members of the petitioner's family or, in the alternative, by counsel's alleged failure to convey accurately the terms of the plea agreement as understood by the prosecutor. We note that the petitioner's characterization of counsel's performance as inadequately protecting the petitioner during plea negotiations relies heavily on a presumption that the prosecutor, in fact, engaged in coercive tactics during plea negotiations. For reasons further articulated in part II of this opinion, in our analysis of the petitioner's procedurally defaulted due process claim, we are unpersuaded by the petitioner's claim that the prosecutor engaged in coercive plea tactics or that her plea was not made knowingly, voluntarily, and intelligently.[5] Although the

---

[4] The petitioner also claims that the habeas court erred by "concluding that there was not a reasonable probability that an unsuccessful self-defense claim at trial could still have served to negate the intent element of the crime of murder and therefore create a reasonable probability of a more favorable outcome to the petitioner . . . ." This claim is without merit. The habeas court properly applied the definition of self-defense found in General Statutes § 53a-19 relative to the petitioner's self-defense claim and the evidence presented. Further, the petitioner's exposure risk included a charge of one count of felony murder, which, unlike murder, does not have a specific intent requirement. See General Statutes § 53a-54c. We also disagree with the petitioner's contention that *State* v. *Abdalaziz*, 248 Conn. 430, 729 A.2d 725 (1999), stands for the principle that an unsuccessful self-defense claim can be used to negate the intent requirement for a murder conviction. Instead, we reiterate, as the Supreme Court has previously, that Connecticut does not recognize the doctrine of imperfect self-defense. Id., 434.

[5] As the respondent submits in his brief, the petitioner's claim that counsel failed to protect her from the "coercive impact" of alleged state coercion is inadequately briefed and therefore considered abandoned. See *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016).

petitioner testified that she would not have pleaded guilty but for the alleged coercion, the court did not find this testimony credible and, instead, found that she was motivated to accept the state's plea offer because of her remorse for the victim's death, her desire to protect her family members from prosecution, and her desire to limit her exposure from a sentence in excess of sixty years of incarceration to an agreed upon sentence of forty years of incarceration.

The petitioner urges us to conclude that, but for counsel's failure to advise her properly and create a proper record of the circumstances surrounding her plea, she would have elected to proceed to trial. We are unpersuaded. "It is clear enough that a [petitioner] must make more than a bare allegation that [s]he [but for counsel's conduct] would have pleaded differently and gone to trial . . . ." (Internal quotation marks omitted.) *Carraway* v. *Commissioner of Correction*, supra, 144 Conn. App. 473. This assertion "suffers from obvious credibility problems and must be evaluated in light of the circumstances the [petitioner] would have faced at the time of [her] decision." (Internal quotation marks omitted.) Id., 475. "Moreover . . . a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla* v. *Kentucky*, supra, 559 U.S. 372; see also *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 280, 149 A.3d 185 (2016), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017).

In evaluating whether a decision to proceed to trial would have been rational under the circumstances, a court may consider, as the habeas court did here, the exposure risk the petitioner faced in the absence of a plea agreement. See *Carraway* v. *Commissioner of Correction*, supra, 144 Conn. App. 476 ("credibility of the petitioner's after the fact insistence that he would have gone to trial should be assessed in light of the

likely risks that pursuing that course would have entailed"); see also *Yerinides* v. *Commissioner of Correction*, 156 Conn. App. 71, 78, 111 A.3d 961 (2015) (rejecting petitioner's claim of prejudice after considering, among other factors, that plea bargained sentence was substantially less than petitioner's possible ultimate sentence). For the charge of murder alone, the petitioner faced a term of incarceration of up to sixty years with a mandatory minimum of twenty-five years of incarceration.[6] In addition, the petitioner faced a maximum sentence of seven years and nine months of incarceration for violating the terms of her probation. The petitioner's plea agreement was for forty years of incarceration. Pursuant to the plea agreement, the state would not pursue the additional charges in the information, each of which carried additional sentencing exposure. In consideration of the petitioner's exposure, the habeas court determined that there is "no reasonable likelihood that [the petitioner] would have rejected an offer and proceeded to trial with a weak or nonviable self-defense claim where the potential exposure was sixty years' incarceration, especially when one of her stated motivations for accepting the offer was to limit her sentence exposure and the offer was to resolve all of her pending cases which added on to her potential exposure."

In light of the nonviability of a self-defense claim and the maximum sentencing exposure the petitioner faced in the absence of a plea agreement, we are unpersuaded that, but for the alleged deficient performance of counsel, the petitioner would have proceeded to trial and, therefore, that the petitioner was prejudiced by trial

---

[6] General Statutes § 53a-54a (c) provides in relevant part: "Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a . . . ."

General Statutes § 53a-35a (2) provides: "For the class A felony of murder, [the sentence of imprisonment shall be fixed by the court as] a term not less than twenty-five years nor more than life . . . ."

counsel's performance. Accordingly, we conclude that the habeas court properly denied the petitioner's ineffective assistance of counsel claims.

## II

Next, the petitioner claims that the habeas court improperly dismissed her claim that her guilty plea was involuntary. We are not persuaded.

As we have already stated in this opinion, the court relied on the procedural default doctrine when it dismissed the petitioner's claim that her plea was involuntary. "[A] habeas court's conclusion that a petitioner's claim is barred by the procedural default doctrine involves a question of law over which we exercise plenary review." *Kukucka* v. *Commissioner of Correction*, 225 Conn. App. 159, 165, 314 A.3d 631, cert. denied, 350 Conn. 904, 323 A.3d 342 (2024).

Where, as here, "a habeas petitioner has failed to file a motion to withdraw his guilty plea or to challenge the validity of the plea on direct appeal, a challenge to the validity of the plea in a habeas proceeding is subject to procedural default." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 175, 982 A.2d 620 (2009). Under the procedural default doctrine, "a claimant may not raise, in a collateral proceeding, claims that he could have made at trial or on direct appeal in the original proceeding and that if the state, in response, alleges that a claimant should be procedurally defaulted from now making the claim, the claimant bears the burden of demonstrating good cause for having failed to raise the claim directly, and he must show that he suffered actual prejudice as a result of this excusable failure." *Hinds* v. *Commissioner of Correction*, 151 Conn. App. 837, 852, 97 A.3d 986 (2014), aff'd, 321 Conn. 56, 136 A.3d 596 (2016).[7]

_____

[7] "[T]he cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance . . . ." (Internal

We conclude that the petitioner has not shown either good cause or actual prejudice sufficient to excuse the procedural default.[8]

"[T]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule. . . . [For example] a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials . . . would constitute cause under this standard." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 568, 941 A.2d 248 (2008). Having already concluded in part I of this opinion that the habeas court properly rejected the petitioner's claim of ineffective assistance of counsel, we conclude that the court properly rejected the petitioner's argument that she could overcome the special defense of procedural default by means of counsel's alleged ineffective performance. For the reasons provided subsequently in this opinion, we also conclude that the habeas court properly rejected the petitioner's claim that allegedly coercive tactics by the state during the plea process provided good cause to excuse her procedural default.

On appeal, the petitioner claims, in essence, that her entire plea process, from the statement she provided to the police regarding the underlying crime prior to receipt of a plea offer, to her ultimate plea of guilty, was the result of a coercive "threat" by the prosecutor to arrest members of the petitioner's family in the

---

quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 567–68, 941 A.2d 248 (2008).

[8] If a petitioner fails to make a showing of good cause, the court will not reach the merits of the habeas claim. See *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 568, 941 A.2d 248 (2008).

absence of full compliance with the plea agreement.[9] The petitioner additionally claims that the alleged coercive threat infected all aspects of the petitioner's plea and provides good cause to excuse the petitioner's failure to raise her due process claim in an earlier proceeding, such as a proceeding to withdraw her guilty plea. We are unpersuaded.

Due process requires a criminal defendant's plea to be entered knowingly and voluntarily. See *Boykin* v. *Alabama*, 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). "[T]he determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances . . . . " (Internal quotation marks omitted.) *State* v. *Johnson*, 253 Conn. 1, 44, 751 A.2d 298 (2000). It does not appear that an appellate court of this state has defined what constitutes "coercive" tactics by the state that could infect a plea process and, specifically, undermine the voluntariness of a plea. Our Supreme Court, however, has discussed the voluntariness of *confessions* in relevant part as follows: "Irrespective of *Miranda* [v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)], and the fifth amendment itself . . . any use in a criminal trial of an involuntary confession is a denial of due process of law. . . . The state has the burden of proving the voluntariness of the confession by a fair preponderance of the evidence. . . . [T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . . The ultimate test remains . . . [i]s the confession the product of an

---

[9] The habeas court found credible Fahey's testimony that he believed he had " 'an overwhelming case' " against the petitioner with five witnesses who implicated the petitioner in the murder; therefore, the only potential value of a statement by the petitioner was if the petitioner implicated her codefendant, which, ultimately, she did not.

essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. . . . The determination, by the trial court, whether a confession is voluntary must be grounded upon a consideration of the circumstances surrounding it." (Citation omitted; internal quotation marks omitted.) *State* v. *Christopher S.*, 338 Conn. 255, 280–81, 257 A.3d 912 (2021). In light of the due process concerns that are implicated by involuntary confessions and involuntary pleas, we see no reason why the principles that are related to an evaluation of the voluntariness of a confession do not apply with equal force in an evaluation of whether a petitioner's guilty plea was so overborne by coercion so as to result in an involuntary plea.

The habeas court, on the basis of the evidence and testimony presented before it, found that the petitioner's claim that her plea and subsequent failure to withdraw her plea were the product of a coercive threat was without merit. The evidence supported a finding that the petitioner was neither threatened nor coerced as she alleged. We therefore conclude that the habeas court properly dismissed the petitioner's due process claim as procedurally defaulted.

The court, having found the testimony of Fahey, Cohen, and LaMark Muir credible, reasonably found that the petitioner's single statement to the police was voluntary. The court found that it was the petitioner who, through counsel, inquired if the prosecutor would be interested in a statement by the petitioner in exchange for assurance from the state that members of the petitioner's family who were "already being investigated and . . . the police were considering seeking arrest warrants for" would not be arrested for their

suspected role in hindering prosecution of the petitioner. LaMark Muir testified that during the one meeting at which the petitioner provided a statement to the police, she elicited information regarding the possible arrests of members of her family. The evidence therefore supports a finding that the petitioner acted with conscious free choice and was not coerced when she elicited from the police information regarding the possible arrest of members of her family and when she, through counsel, offered to provide a statement regarding the underlying crime in exchange for the immunization of members of her family.

In further support of her claim that her plea was involuntary, the petitioner testified that she, at the direction of trial counsel, met alone with Fahey multiple times. During one of those meetings, she claims, he displayed to her five affidavits, each for the arrest of a member of the petitioner's family. The court rejected the petitioner's testimony as not credible. Instead, the court credited the testimony of Cohen, Fahey, and LaMark Muir who each testified that Cohen was present, and Fahey was not, for the one meeting during which the petitioner provided a voluntary statement to the police. The court also determined that at no time did the petitioner meet with Fahey. Instead, the court found credible "that there was one meeting during which [the petitioner] provided a statement and [Cohen] was present for that meeting with police officers, but [Fahey] was not." We therefore conclude there was no error in the court rejecting the petitioner's claim. In deference to the habeas court as the trier of fact, we do not disturb the court's credibility determination that the petitioner's claim that Fahey threatened to arrest members of the petitioner's family during a private, one-on-one meeting was not credible. On the basis of the factual predicate that the alleged meeting during

which Fahey threatened to arrest members of the petitioner's family suspected of hindering the petitioner's prosecution did not occur, we conclude that the petitioner's plea was not the result of a coercive threat but, rather, a voluntary choice made by the petitioner in an effort to receive a benefit for herself and members of her family.

The habeas court's finding that the petitioner's claim that she was threatened or otherwise coerced to plead guilty was meritless is further supported by the petitioner's own responses during her plea canvass conducted by the trial court. When the petitioner was directly asked by the court during her plea canvass, "[h]as anyone forced you or threatened you in any way to make you enter these pleas," the petitioner responded, "No." When the court then asked, "Are these pleas of your own free will," the petitioner responded, "Yes." And when the court asked, "Other than [the sentence term] agreement, did anyone promise you anything else to have you enter these pleas," the petitioner responded, "No."[10] Had the petitioner felt threatened or otherwise coerced into entering a guilty plea, she had an unencumbered opportunity to make the trial court aware of the alleged threat. She declined to do so.

Upon review of the testimony and evidence presented before the habeas court, we conclude that the habeas court's factual finding that the state's actions did not constitute a coercive " 'threat' " was not erroneous and, therefore, that the petitioner's plea was not involuntary. As the respondent aptly argues, because the habeas

---

[10] Habeas courts may rely on "the responses of the [petitioner] at the time [s]he responded to the trial court's plea canvass . . . ." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 215 Conn. App. 167, 185, 282 A.3d 1036, cert. denied, 345 Conn. 921, 284 A.3d 983 (2022); see also *State* v. *Schlosser*, 211 Conn. App. 143, 151, 271 A.3d 1074 (addressing "the issue of whether a defendant's plea was knowingly or voluntarily made" in light of "the canvass conducted by the [trial] court"), cert. denied, 343 Conn. 923, 275 A.3d 212 (2022).

court resolved the petitioner's claim of alleged coercion as a matter of fact predicated on its credibility determinations, the petitioner's claim that the habeas court erred in rejecting her claim of cause and prejudice based on coercion is meritless. The petitioner has therefore not met her burden of demonstrating an objective external factor sufficient to excuse her procedural default.

Consistent with our determination that the petitioner has failed to demonstrate that she was prejudiced by counsel's performance, we conclude that the petitioner has failed to show actual prejudice as a result of the state's offer to immunize members of the petitioner's family against prosecution as part of the petitioner's plea negotiations. The evidence supports the court's finding that the petitioner solicited and accepted the benefits of a plea agreement. As a result of the petitioner providing a statement to the police, the state abandoned its intention to arrest and prosecute members of the petitioner's family suspected of hindering the petitioner's prosecution. It is undisputed that, as a result of the plea, the state reduced the petitioner's charges to one count of murder and one count of violation of probation. As a further result of the plea, the state agreed not to pursue other outstanding charges against the petitioner. The petitioner's sentencing exposure also was reduced from more than sixty years to forty years of incarceration. Had the petitioner believed there to be a coercive element of her plea agreement, she had an opportunity to make the court aware of the state's alleged actions during her plea canvass. To excuse a procedural default, a petitioner must demonstrate good cause for her failure to make a claim in an original proceeding that she now seeks to raise in a collateral proceeding, and she must show actual prejudice as a result of that failure. The petitioner has failed to satisfy this burden. We therefore

conclude that the habeas court properly dismissed the petitioner's due process claim as procedurally defaulted.

The judgment is affirmed.

In this opinion the other judges concurred.